**STATE of Iowa, Appellee,**

v.

**Samuel John SPIES, Appellant.**

No. 02–1991.

Supreme Court of Iowa.

Dec. 17, 2003.

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, John P. Sarcone, County Attorney, and Robert DiBlasi, Assistant County Attorney, for appellee.

STREIT, Justice.

Samuel John Spies appeals his convictions for possession and delivery of methamphetamine. Spies claims there was insufficient evidence presented at his bench trial to sustain the delivery conviction. He also alleges he was denied effective assistance of counsel, because his attorney failed to ensure he adequately waived his

right to a jury trial. We reject Spies' sufficiency claim, find his trial attorney did not fail to perform an essential duty, and affirm his convictions.

## I. Facts and Prior Proceedings

Last June, an anonymous informant told Ankeny police a man in the parking lot of Loco Joe's (a local pool hall and arcade) tried to sell him "crank." The tipster gave police the man's license plate number. The police investigated and discovered the plate was registered to Spies.

The police dispatched Officer Curtis Pote to Loco Joe's. Officer Pote had training and experience in the investigation of the illegal narcotics trade. He recognized "crank" as the street-name for methamphetamine, a controlled substance. *See* Iowa Code § 124.401 (2001) (designating methamphetamine as a controlled substance).

Pote found Spies' vehicle, but not the man himself. Working undercover, Pote went into Loco Joe's and found Spies playing pool. Biding his time, Pote waited for Spies to leave. When Spies left, Pote followed him to his car and asked him if he could give him "any stuff." Spies said he didn't know what Pote was talking about.

Pote told Spies a man inside Loco Joe's had told him Spies could "hook [him] up with some crank." Spies asked Pote who the man was, and Pote replied he didn't know. Spies told Pote to go back into Loco Joe's and point him out.

Once inside, Pote briefly looked around, and then told Spies he couldn't find the man who had directed him to Spies. Spies asked Pote what he wanted. Pote said he "was looking for a teener."[1] Spies said he "might be able to help" Pote, but he didn't know Pote. Spies asked Pote if he was a "narc," which the latter denied.

Pote asked Spies how much a "teener" would cost. Spies told Pote it would cost him $100. At trial, Pote testified that in his training and experience, a "teener" generally costs $100 in the illegal narcotics business.

Pote asked Spies if he had the methamphetamine with him. Spies said he did not. Instead, Spies said "I have to call my guy." Using Pote's cell phone, Spies called someone. Pote heard Spies say

"Hey this is me."

"I need to get some stuff."

"The same amount as last time, all right?"

"I'll see you in a little bit."

Spies then told Pote "I can get it. I'll be back in one-half hour." Pote attempted to confirm the deal: "You're getting me a teener for one hundred dollars?" Spies confirmed the deal, and agreed to meet Pote back in the parking lot in a half-hour.

Once Spies left, Pote radioed his fellow officers and instructed them not to stop Spies. Pote wanted to be able to follow Spies, presumably to his supplier. Another officer misunderstood Pote's request, however, and arrested Spies on an unrelated warrant.

At the police station, Spies asked Pote if he could make a call. Spies did not ask Pote to leave the room, however, and Pote overheard Spies ask someone "to go get the stuff out of the middle drawer of [Spies'] dresser." Spies said, "You'll know what it is when you see it."

Pote confronted Spies, and asked him if he had drugs or drug paraphernalia in his dresser. Spies admitted he did, and consented to a search of his residence. Spies and Pote went to Spies' place, and Spies

---

1. In the drug trade, a "teener," Pote testified, is about 1.75 grams of methamphetamine.

showed Pote drug paraphernalia and .25 grams of methamphetamine.

Spies was charged with three offenses: conspiracy to deliver a controlled substance, delivery of a controlled substance, and possession of a controlled substance. *See* Iowa Code §§ 124.401(1)(*c* )(6), 124.401(5) (2001). Spies filed a written waiver of his right to a jury trial, which both he and his attorney signed. The trial transcript reveals the court also mentioned this waiver to counsel just before trial, although the court did not conduct a colloquy with Spies. After a bench trial, the district court convicted Spies of the delivery and possession charges. The court acquitted Spies of conspiracy to deliver methamphetamine.

On appeal, we are presented with two issues: (1) Did the State present sufficient evidence to sustain Spies' conviction for delivery of a controlled substance? and (2) Was Spies denied effective assistance of counsel, because of an inadequate jury trial waiver?

## II. Sufficiency of the Evidence

Spies contends there was insufficient evidence presented at trial to prove, beyond a reasonable doubt, he delivered a controlled substance. In order to convict Spies, the State needed to prove (1) Spies delivered methamphetamine and (2) Spies knew the substance he was delivering was a controlled substance. Iowa Code § 124.401; *State v. Moore*, 529 N.W.2d 264, 265 (Iowa 1995) (citing *State v. Osmundson*, 241 N.W.2d 892, 893 (Iowa 1976)). The Code defines "deliver" and "delivery" as "the actual, constructive, or *attempted transfer* from one person to another of a controlled substance, whether or not there is an agency relationship." Iowa Code § 124.101(7) (emphasis added).

## A. Scope of Review

We review challenges to the sufficiency of evidence for errors at law. *State v. Cashen*, 666 N.W.2d 566, 569 (Iowa 2003) (citing *State v. Yeo*, 659 N.W.2d 544, 547 (Iowa 2003)). A finding of guilt is binding upon us so long as there is substantial evidence to support it. *State v. Lambert*, 612 N.W.2d 810, 813 (Iowa 2000). "If a rational finder of fact could conceivably find the defendant guilty beyond a reasonable doubt, the evidence is substantial." *Id.* "We review the record in the 'light most favorable to the State, including legitimate inferences and assumptions that may fairly and reasonably be deduced from the evidence in the record.'" *Cashen*, 666 N.W.2d at 569 (quoting *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002)).

## B. Analysis—Attempted Transfer

Spies contends that, in order to sustain the delivery conviction, the State needed to prove the existence of the contraband to be sold, i.e., a teener, or the identity of a supplier. Spies points out the State failed to prove either. In the absence of these two facts, Spies alleges the record is barren of any criminality. There is, Spies posits, insufficient evidence to show he intended to keep his promise to Pote. Moreover, Spies' uncorroborated admissions, standing alone, are insufficient to sustain his conviction. *See State v. Polly*, 657 N.W.2d 462, 466 n. 1 (Iowa 2003) (citing *Opper v. United States*, 348 U.S. 84, 89, 75 S.Ct. 158, 162, 99 L.Ed. 101, 106 (1954)) ("admissions made after the crime must also be supported with sufficient corroborating evidence").

We reject Spies' sufficiency challenge. We have previously held proof of possession is not necessary for proof of delivery. *State v. Welch*, 507 N.W.2d 580, 582 (Iowa 1993) ("delivery does not require possession"); *State v. Grady*, 215 N.W.2d 213,

214 (1974) ("possession is not a necessary legal element of delivery"); *accord State v. Miller*, 535 N.W.2d 144, 148 (Iowa Ct.App. 1995) (finding substantial evidence for delivery conviction even though no drugs found). Nor must the State prove the identity of the defendant's supplier. Iowa Code chapter 124 does not expressly mandate that proof of delivery requires proof of either possession or the identity of a supplier from which possession may be secured. Because "deliver" and "delivery" are defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance," and transfer is defined as "the conveyance of right, title or interest in either real or personal property from one person to another by sale, gift, or other process" it is sufficient if the defendant attempted to transfer contraband from one person to another. Iowa Code § 124.101(7); *Grady*, 215 N.W.2d at 214 (citations omitted).

Viewing the evidence in the light most favorable to the State, we find there is substantial evidence, which does not solely consist of uncorroborated admissions, to show Spies attempted to transfer methamphetamine to Pote. In proving an attempt, the State need only show a rational trier of could find

(1) an intent to do an act or bring about certain consequences which would in law amount to a crime; and

(2) an act in furtherance of that intent which . . . goes beyond mere preparation.

4 Robert R. Rigg, *Iowa Practice, Criminal Law* § 10.3, at 232 (2003) (footnote omitted); *accord State v. Roby*, 194 Iowa 1032, 1040–45, 188 N.W. 709, 712–15 (1922); *see also Fryer v. State*, 325 N.W.2d 400, 406 (Iowa 1982) ("The common law principles of attempt require the State to prove (1) intent to commit the crime and (2) slight acts in furtherance of the crime that render voluntary termination improbable.").

The record shows a rational trier of fact could find Spies (1) intended to transfer methamphetamine to Pote and (2) committed an overt act furthering that intent. Shortly after meeting Pote, Spies participated in a conversation which is consistent with someone attempting to transfer methamphetamine: Spies asked Pote what he needed. When asked how much a teener of crank would cost, Spies said $100, the going-rate for such an amount of methamphetamine. Because Spies did not have the drugs with him, he asked Pote if he could use his cell phone in order to arrange the sale. In addition to the mere fact of the call, Spies' side of the conversation clearly shows he was attempting to sell drugs from his supplier. The conversation also indicated he had sold drugs before. Spies then confirmed the deal. A rational trier of fact could find these foregoing facts proved Spies intended to transfer methamphetamine to Pote.

■■■ Crucially, after Spies confirmed the deal, he told Pote he would be back with the drugs in a half-hour, and drove off in his car. In context, a rational trier of fact could find he left to get the drugs and this last action was an overt act designed to transfer methamphetamine to Pote. As we explained in *Roby*,

> where a person does an act tending to the commission of a crime, but which is prevented from reaching the desired result through the intervention of some cause, he is guilty of an attempt. It is doubtless true that mere acts of preparation not proximately leading to the consummation of the intended crime will not suffice to establish an intent to commit it, especially when made at a distance from the place where the substantial offense is to be committed; and there must be some act moving directly

toward the commission of the offense after the preparations are made.

... The overt act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory ... While it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.

*Roby,* 194 Iowa at 1043, 188 N.W. at 714 (citations omitted). In getting in his car and driving away, a rational trier of fact could find Spies committed an overt act designed to transfer methamphetamine to Pote; Spies had just confirmed the deal and told Pote he would be back in a half-hour with the drugs. The act of driving towards his supplier, although not "the last proximate act to the consummation" of the transfer of the drugs, could be construed "as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made." *See id.* We therefore find there was sufficient evidence of Spies' attempting to transfer drugs and to sustain the delivery charge.

## III. Ineffective Assistance of Counsel

Spies claims he was denied effective assistance of counsel because the district court which accepted his jury trial waiver did not conduct an in-court colloquy with him. To ensure jury trial waivers are knowing, voluntary, and intelligent, we have previously stated a court

should inquire into the defendant's understanding of the difference between jury and nonjury trials by informing the defendant:

1. Twelve members of the community compose a jury,

2. the defendant may take part in jury selection,

3. jury verdicts must be unanimous, and

4. the court alone decides guilt or innocence if the defendant waives a jury trial.

*State v. Stallings,* 658 N.W.2d 106, 111 (Iowa 2003) (citing *United States v. Robertson,* 45 F.3d 1423, 1432 (10th Cir.1995)). In *Stallings,* we said the judge "should [also] seek to ascertain whether [the] defendant is under [the] erroneous impression that he or she will be rewarded, by either court or prosecution, for waiving [a] jury trial." *Id.* (citing 2 Charles Alan Wright, *Federal Practice & Procedure* § 372, 452–53 n. 22 (3d ed.2000)). Because the district court did not conduct an in-court colloquy which included these five subjects of inquiry, Spies asks us to conclude his counsel failed to perform an essential duty and presume prejudice.

### A. Scope of Review

We review a claim of ineffective assistance of counsel de novo. *Stallings,* 658 N.W.2d at 108. An ineffective assistance of counsel claim fits within "an exception to the general rules of error preservation." *Id.* (citing *State v. Lucas,* 323 N.W.2d 228, 232 (Iowa 1982)). Although such claims are, in general, preserved for post-conviction relief, where the record is adequate we will consider the merits of the claim on direct appeal. *Id.* (citing *State v. Buck,* 510 N.W.2d 850, 853 (Iowa 1994)). In the present case, the record is sufficient.

### B. Analysis

We begin our analysis with the recognition "there is a strong presumption that counsel's performance meets profes-

sional standards." *State v. Oetken,* 613 N.W.2d 679, 683 (Iowa 2000). Bearing this presumption in mind, in order to succeed in his ineffective assistance of counsel claim, Spies must show "(1) his counsel failed to perform an essential duty, and (2) prejudice resulted." *State v. Liddell,* 672 N.W.2d 805, 809 (Iowa 2003). Spies must prove each of these two elements of his ineffective assistance of counsel claim by a preponderance of the evidence. *State v. Pace,* 602 N.W.2d 764, 774 (Iowa 1999). Should he fail to prove either element, so too must his ineffective assistance claim fail. *See id.*

Having duly considered all the arguments of the parties, we conclude Spies' trial counsel did not fail to perform an essential duty. We need not here repeat the current state of the law of jury trial waivers in Iowa; rather, as we also explained in a companion case filed today, we need only point out this case mirrors a prior case, *State v. Lawrence,* 344 N.W.2d 227 (Iowa 1984). Well-settled *Lawrence* doctrine governs the facts of this case. *See Liddell,* 672 N.W.2d at 811 (applying *Lawrence* on similar facts).

Unlike *Stallings,* a case in which the record contained neither a written waiver nor a transcript of an in-court colloquy, here the defendant and his attorney signed and filed a written waiver of Spies' right to a jury trial. This waiver is part of the record of the case. The trial transcript also reveals this waiver was mentioned by the court to counsel prior to trial. Although no in-court colloquy was conducted, this is clearly not a case in which, like *Stallings,* "there [was] ... no evidence that the court was even included in the waiver process." *Id.* (citing *Stallings,* 658 N.W.2d at 112). Unlike *Stallings,* here there is evidence the court was included in the waiver process. *See Liddell,* 672 N.W.2d at 809.

■ According to *Lawrence,* the failure of the district court to conduct an in-court colloquy does not violate the Iowa Rules of Criminal Procedure. *Liddell,* 672 N.W.2d at 810 (citing *Lawrence,* 344 N.W.2d at 229–30). In *Lawrence,* we refused to conclude a jury trial waiver was not knowing, voluntary, and intelligent simply because there was no in-court colloquy. *See id.* In this case, as in *Lawrence,* the defendant filed a jury trial waiver which he signed. *See Lawrence,* 344 N.W.2d at 229–30. Although we recognize "our task ... would have been greatly simplified if the trial court had conducted even a brief proceeding in open court at which defendant could attest his waiver," we must refuse to conclude Spies' waiver was not knowing and voluntary because there was no in-court colloquy. *See id.* Instead, "a written jury waiver taken in compliance with [the] rule ... is prima facie evidence that the waiver was voluntary and intelligent. When the defendant subsequently attacks its validity, he bears the burden of proving otherwise." *Id.* at 230. Because there is no evidence in the record, nor any allegation on appeal, that his signed, written waiver was not knowing, voluntary, and intelligent, we refuse to conclude Spies' trial counsel failed to perform an essential duty. Where the evidence establishes voluntary waiver, trial counsel has no duty to preserve the issue for appeal. *See Buck,* 510 N.W.2d at 853. Spies' ineffective assistance of counsel claim must, therefore, fail. *Id.*

■ Nor does our partial overruling of *Lawrence* in *Liddell* affect our decision in this case. *See Liddell,* 672 N.W.2d at 811– 14 (interpreting "on the record" to require an in-court colloquy). As we explained in *Liddell,*

it would be patently unfair to adjudge Liddell's counsel ineffective for failing to foresee [that] decision, which diverges

from precedent. "Counsel need not be a crystal gazer; it is not necessary to know what the law will become in the future to provide effective assistance of counsel."

*Liddell,* 672 N.W.2d at 814 (quoting *Snethen v. State,* 308 N.W.2d 11, 16 (Iowa 1981)).

## IV. Conclusion

There was sufficient evidence presented at trial to sustain Spies' conviction for delivery of methamphetamine. Because Spies has failed to show his trial counsel failed to perform an essential duty, we cannot conclude he was denied effective assistance of counsel. His convictions for delivery and possession of methamphetamine must be upheld.

**AFFIRMED.**