# IN THE SUPREME COURT OF IOWA

No. 12–1065

Filed November 14, 2014

Amended January 29, 2015

**STATE OF IOWA,**

      Appellee,

vs.

**JABARI LAMAR WALKER,**

      Appellant.

---

    On review from the Iowa Court of Appeals.

    Appeal from the Iowa District Court for Linn County, Nancy A. Baumgartner, Judge.

    Defendant seeks further review of a court of appeals decision sustaining the writ of certiorari requested by the State, vacating the sentence imposed by the district court, and remanding for resentencing. **COURT OF APPEALS DECISION AFFIRMED, WRIT SUSTAINED, AND CASE REMANDED.**

    Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant Appellate Defender, for appellant.

    Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Tyler J. Buller, Assistant Attorney General, and Jerry Vander Sanden, County Attorney, for appellee.

**MANSFIELD, Justice.**

The general assembly has enacted enhanced penalties for persons who commit a second "sexually predatory offense" after having been previously convicted of a sexually predatory offense. *See* Iowa Code § 901A.2 (2011). Under this law, sexually predatory offense includes "[a]ny offense involving an attempt to commit [sexual abuse]." *Id.* § 901A.1(1)(*e*). Today, we must decide whether a jury finding that the defendant committed kidnapping with intent to subject the victim to sexual abuse, *see id.* § 710.1(3), means that the defendant committed an offense involving an attempt to commit sexual abuse and therefore is eligible for this enhancement. For the reasons set forth herein, we follow our prior decision in *State v. Harrington*, 608 N.W.2d 440 (Iowa 2000), and hold that the jury finding has that effect. We therefore sustain the State's requested writ of certiorari, vacate the district court's ruling that the jury finding cannot serve as the basis for an enhanced sentence under Iowa Code section 901A.2(3), affirm the court of appeals decision, and remand for further proceedings.

## I. Background Facts and Proceedings.

During the early morning hours of May 7, 2011, a Linn County sheriff's deputy was on routine patrol in a rural, northeastern part of the county. He noticed a vehicle parked at an abandoned farmstead with its lights off.

The deputy decided to investigate. As he pulled up the driveway, he saw two individuals. One was sitting in the front passenger seat of the car. The other, a man, was standing between the open front passenger door and the vehicle. The standing man was later identified as the defendant, Jabari Walker, and the person seated in the front passenger seat was later identified as the female victim, L.N. Upon the

deputy's approach, L.N. jumped out of the car and ran toward the deputy's vehicle crying and upset.

Walker yelled at L.N. to tell the deputy she was Walker's girlfriend. He started to run after her. As he ran, he zipped up his pants. L.N., speaking frantically, said that she did not know Walker, that she had just met him, that she was afraid Walker was going to kill her, and that Walker had demanded that she give him oral sex.

It later turned out that Walker and L.N. had met in an Iowa City bar about an hour earlier and, according to the bar's surveillance video, walked out of the bar together. Walker and L.N. then drove their respective vehicles to a Coralville motel where Walker dropped off two male companions and paid for their motel room. After that, Walker and L.N. proceeded away from the motel in Walker's car, leaving L.N.'s car behind in the motel parking lot.

According to L.N., the plan was for the two of them to go out to eat at a nearby restaurant. However, Walker refused to do this and instead drove toward Cedar Rapids on I-380. While Walker was driving, according to L.N., he grabbed her head and forced her mouth on his penis. Urgently seeking an excuse to get out of the car, L.N. told Walker she needed to urinate. As related by L.N., Walker ignored her pleas and continued north on I-380. Walker drove past the exit for his own Cedar Rapids apartment, took a subsequent exit, drove another five miles, and finally parked at the abandoned farmhouse in a rural area.

When they reached the deserted farmstead, as L.N. related at trial, Walker let her out of the car to urinate but she was unable to do so. According to L.N., Walker then made her get back into the car and was again forcing her to engage in oral sex when the sheriff's deputy arrived.

L.N.'s DNA was found on Walker's penis. At trial, Walker took the stand and described a different set of events. He claimed that L.N. had consensually committed an oral sex act on him in his vehicle in an Iowa City parking lot right after leaving the bar. He also claimed that the plan was for the two to go to Walker's Cedar Rapids apartment for the night after dropping off Walker's companions at the motel, but that L.N. changed her mind while they were in Walker's car on I-380.

Walker testified he told L.N. he was too tired to turn around and drive her back home, but when L.N. mentioned having a friend in Cedar Falls, he agreed to take her there and proceeded to drive further north on I-380. Walker explained that he was new to the area and did not immediately realize how far away Cedar Falls was. According to Walker's version of events, L.N. then began insisting she needed to urinate, so he took the exit after the one for his apartment and drove around unsuccessfully looking for a restroom, finally ending up at the abandoned farmhouse. Walker denied that he had involuntarily confined L.N. or that he had forced or intended to force L.N. to have sex with him.

On May 31, the State filed a trial information charging Walker with first-degree kidnapping, a class "A" felony, in violation of Iowa Code sections 710.1 and 710.2.[1] The trial information included a proposed

---

[1]According to section 710.1,

> A person commits kidnapping when the person either confines a person or removes a person from one place to another, knowing that the person who confines or removes the other person has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:
>
> . . . .
>
> 3. The intent . . . to subject the person to a sexual abuse.

Iowa Code § 710.1. According to section 710.2, first-degree kidnapping occurs when the victim "is intentionally subjected to . . . sexual abuse." *Id.*

enhancement under Iowa Code section 901A.2(3) based on Walker's prior 2006 conviction in Ohio of a sexually predatory offense.[2]

Trial commenced on August 22. On August 30, the jury returned a verdict finding Walker guilty of the lesser included offense of third-degree kidnapping, a class "C" felony. Kidnapping in the third-degree required the jury to find that the defendant confined or removed the victim with the *intent* to commit sexual abuse on her, but did not require a finding that the victim had actually been subjected to sexual abuse. *See* Iowa Code §§ 710.1(3), .4. In particular, according to the relevant marshaling instruction, the jury had to find:

> 1. On or about the 7th day of May, 2011, Jabari Walker:
>    a. confined [L.N.], or
>    b. removed [L.N.] from one place to another.
> 2. Jabari Walker knew he did not have the consent of the victim to do so.
> 3. Jabari Walker did so with the specific intent to subject [L.N.] to sexual abuse, as defined in Instruction No. 21.[3]

---

[2]Section 901A.2(3) provides in part:

[A] person convicted of a sexually predatory offense which is a felony, who has a prior conviction for a sexually predatory offense, shall be sentenced to and shall serve twice the maximum period of incarceration for the offense, or twenty-five years, whichever is greater, notwithstanding any other provision of the Code to the contrary. A person sentenced under this subsection shall not have the person's sentence reduced under chapter 903A or otherwise by more than fifteen percent.

Iowa Code § 901A.2(3).

[3]The jury was further instructed:

A person is "confined" when her freedom to move about is substantially restricted by force, threat or deception. The person may be confined either in the place where the restriction began or in a place to which she has been removed.

No minimum time of confinement or distance of removal is required. It must be more than slight. The confinement and removal must have significance apart from the sexual abuse.

In determining whether confinement and removal exists, you may consider whether:

In the ensuing enhancement proceeding, Walker did not dispute that he had a prior Ohio conviction for "sexual imposition," a misdemeanor. However, he argued the Ohio conviction did not qualify as a sexually predatory offense within the meaning of Iowa Code section 901A.1(1).[4] He further argued that his Iowa third-degree kidnapping conviction was not a sexually predatory offense under section 901A.1(1), either. Walker urged that a jury finding he had intended to commit sexual abuse did not amount to a finding he had attempted to commit sexual abuse as required by section 901A.1(1).

The State, meanwhile, asserted that both the Ohio predicate offense and the Iowa conviction qualified as sexually predatory offenses within the meaning of section 901A.1(1). According to the State, the jury's findings that Walker had confined or removed L.N. while intending

---

1. The risk of harm to [L.N.] was increased.

2. The risk of detection was reduced.

3. Escape was made easier.

[4]Section 901A.1(1) in turn provides:

1. As used in this chapter, the term "*sexually predatory offense*" means any serious or aggravated misdemeanor or felony which constitutes:

*a.* A violation of any provision of chapter 709.

*b.* Sexual exploitation of a minor in violation of section 728.12, subsection 1.

*c.* Enticing a minor away in violation of section 710.10, subsection 1.

*d.* Pandering involving a minor in violation of section 725.3, subsection 2.

*e.* Any offense involving an attempt to commit an offense contained in this section.

*f.* An offense under prior law of this state or an offense committed in another jurisdiction which would constitute an equivalent offense under paragraphs "*a*" through "*e*".

Iowa Code § 901A.1(1).

to sexually abuse her, as required for the third-degree kidnapping conviction, were enough to establish that Walker had committed an "offense involving an attempt to commit" sexual abuse. Thus, in the State's view, Walker met section 901A.2(3)'s grounds for an enhanced sentence.

On May 29, 2012, the district court ruled that the third-degree kidnapping conviction did not qualify as a sexually predatory offense within the meaning of Iowa Code section 901A.1(1). The district court essentially agreed with Walker's position; it explained that an attempt to commit an offense and an intent to commit an offense were not interchangeable. The district court found it unnecessary to reach the question whether the Ohio conviction met the definition of a sexually predatory offense. Because the court denied the enhancement, it sentenced Walker to an indeterminate term of ten years, rather than imposing a twenty-five-year sentence.

Walker appealed his conviction to this court. In addition, the State sought review of the district court's sentencing order by writ of certiorari. We granted the State's petition and consolidated it with Walker's appeal. For briefing purposes, we directed that the certiorari proceeding be treated as a cross-appeal by the State.

Walker's appeal raised a single argument—that his trial counsel was ineffective in failing to move for a new trial on the ground that the verdict was against the weight of the evidence.[5] On certiorari, the State argued the district court erred in ruling that Walker's third-degree kidnapping conviction was not a sexually predatory offense within the

---

[5]Trial counsel did move for a new trial on other grounds, which were rejected by the district court.

meaning of Iowa Code section 901A.1(1). We transferred the case to the court of appeals.

The court of appeals rendered a decision on January 9, 2014. It rejected Walker's appeal, finding that "the record simply does not support Walker's claim that the evidence preponderates heavily against the verdict." The court elaborated,

> From our review of the evidence, we find a greater weight of the evidence supports the jury's verdict, and as a result, there is no reasonable probability the district court would have granted a new trial on this ground had Walker's attorney raised it. Because Walker cannot establish he was prejudiced by any breach of his trial counsel's duty, his ineffective-assistance claim must fail on this ground.

The court of appeals also agreed with the State's position that Walker's third-degree kidnapping conviction was a sexually predatory offense. Relying significantly on *Harrington*, the court explained its reasoning as follows:

> Although kidnapping is not specifically designated as a sexually predatory offense in section 901A.1(1), Walker's kidnapping conviction falls under section 901A.1(1)(*e*)— "[a]ny offense involving an attempt to commit an offense contained in this section"—as a sexually predatory offense. Necessarily incorporated into Walker's kidnapping conviction was the jury's finding Walker confined or removed [L.N.] from one place to another, knowing he did not have [L.N.]'s consent, and "*did so with the specific intent to subject . . . [L.N.] to sexual abuse,*" for the jury, as instructed, had to make such findings in order to find Walker guilty of kidnapping in the third degree. (Emphasis added.) Following the *Harrington* holding, we conclude Walker's third-degree-kidnapping offense involved an attempt to commit another offense contained in section 901A.1. That offense was sexual abuse, which is contained in subparagraph (*a*) of that section designating "any provision of chapter 709."

(Footnotes omitted.) As a result, the court of appeals sustained the writ of certiorari, vacated Walker's sentence, and remanded for resentencing. The court directed the trial court on remand to determine whether

Walker's prior conviction in Ohio qualified as a sexually predatory offense and, if so, to impose the sentencing enhancement authorized by Iowa Code chapter 901A.

One judge on the court of appeals panel concurred specially. She agreed the court was bound by our *Harrington* decision, but added:

> [I]f we were writing on a blank slate, I would find the sentencing enhancement for sexually predatory offenses as defined in Iowa Code section 901A.1(1)(*e*) (2011) should only apply when the jury finds the defendant has committed the act or acts necessary to establish an attempt to commit one of the offenses listed in sections 901A.1(1)(*a*)–(*d*). *See generally Apprendi v. New Jersey*, 530 U.S. 466, 476[, 120 S. Ct. 2348, 2355, 147 L. Ed. 2d 435, 446] (2000) (holding any fact, other than a prior conviction, that increases the maximum penalty beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt).

Walker applied to this court for further review, and we granted his application.

## II. Standard of Review.

We review questions of statutory interpretation, such as the meaning of Iowa Code section 901A.1(1), for correction of errors at law. *State v. Overbay*, 810 N.W.2d 871, 875 (Iowa 2012). We review constitutional questions, such as whether *Apprendi* requires a separate determination that Walker attempted to commit sexual abuse, de novo. *State v. Nail*, 743 N.W.2d 535, 538 (Iowa 2007).

## III. Analysis.

When we grant further review of a decision of the court of appeals, we have discretion to let the court of appeals decision stand as the final decision on one or more issues. *State v. Becker*, 818 N.W.2d 135, 140 (Iowa 2012). We exercise that discretion here. Thus, the court of appeals decision will stand on the question whether Walker's trial

counsel committed ineffective assistance of counsel by not moving for a new trial on the ground the jury verdict was against the weight of the evidence.

This leaves the question whether the district court erred in its ruling that Walker's kidnapping conviction was not a sexually predatory offense. Indisputably, the conviction required a jury finding that Walker confined or removed his victim with the intent to commit sexual abuse. Nonetheless, the district court found that this verdict did not amount to a determination that Walker had committed an "offense involving an attempt to commit" sexual abuse. Iowa Code § 901A.1(1)(*e*). The State, however, maintains that someone who confines or removes another person with the intent to sexually abuse her has attempted to commit sexual abuse within the meaning of Iowa Code section 901A.1(1)(*e*). The court of appeals accepted this position.

We agree with the court of appeals and the State that our *Harrington* decision confronted essentially the same question we are presented with today. Harrington had been charged with third-degree kidnapping. *See Harrington,* 608 N.W.2d at 440. At trial, the State presented evidence that Harrington had attempted to sexually abuse his victim. *Id.* The jury convicted Harrington of the lesser included offense of false imprisonment, but in a special interrogatory found that he had committed false imprisonment with the intent to commit sexual abuse. *Id.* The district court imposed an enhancement, indicating that it "believed the conviction for false imprisonment met the statutory definition of a sexually predatory offense because it had been an attempt to commit kidnapping as defined in section 710.1."[6] *Id.* at 441.

_____

[6]At that time, the definition of "sexually predatory offense" in the enhancement statute read as follows:

On appeal, the defendant argued that the district court had erred and that his false-imprisonment conviction was not a sexually predatory offense for enhancement purposes. *See id.* We decided the district court had followed the wrong reasoning: In our view, the false-imprisonment conviction was not tantamount to an attempt to commit kidnapping. *Id.* However, we sustained the enhancement on another ground. *Id.* As we explained,

> [W]e think that, based on the jury's answer to the interrogatory, the false-imprisonment offense involved an attempt to commit another offense contained in section 901A.1. That offense was sexual abuse, which is contained in subpart *a* of that section, which designates "any provision of chapter 709."

*Id.*

---

1. As used in this chapter, the term "*sexually predatory offense*" means any serious or aggravated misdemeanor or felony which constitutes:

*a.* A violation of any provision of chapter 709.

*b.* A violation of any of the following if the offense involves sexual abuse, attempted sexual abuse, or intent to commit sexual abuse:

(1) Murder as defined in section 707.1.

(2) Kidnapping as defined in section 710.1.

(3) Burglary as defined in section 713.1.

(4) Child endangerment under section 726.6, subsection 1, paragraph "*e*".

*c.* Sexual exploitation of a minor in violation of section 728.12, subsection 1.

*d.* Pandering involving a minor in violation of section 725.3, subsection 2.

*e.* Any offense involving an attempt to commit an offense contained in this section.

*f.* An offense under prior law of this state or an offense committed in another jurisdiction which would constitute an equivalent offense under paragraphs "*a*" through "*e*".

Iowa Code § 901A.1(1) (1997). The district court found that Harrington's conviction was for a sexually predatory offense within the meaning of section 901A.1(1)(*b*)(2), as it then read. *See Harrington*, 608 N.W.2d at 441.

False imprisonment is committed when a person, "having no reasonable belief that the person has any right or authority to do so, . . . intentionally confines another against the other's will." Iowa Code § 710.7. Thus, we found in *Harrington* that intentionally confining another person against the other person's will with the intent to subject the other person to sexual abuse "involved an attempt to commit" sexual abuse as required by the enhancement statute. *Harrington*, 608 N.W.2d at 441.

This case presents a similar scenario. Walker was convicted of third-degree kidnapping, which, as instructed in this case, required the jury to find that he "confined or removed [L.N.] from one place to another" and "did so with the specific intent to subject [L.N.] to sexual abuse." *Harrington* would appear to govern here. If Harrington's crime involved an attempt to commit sexual abuse within the meaning of section 901A.1, seemingly so would Walker's. Both cases involved jury determinations that the defendant had engaged in conduct (confinement in *Harrington*, confinement or removal here) with the intent to subject the victim to sexual abuse.

It is true that the jury found intent in different ways in the two cases—in *Harrington*, by way of special interrogatory, here, as one of the required elements of the crime for which the defendant was convicted. But Walker does not explain on appeal why that should make a difference. In fact, neither his answering brief to the State's cross-appeal nor his application for further review to this court discuss *Harrington* at all, even though it features prominently in the court of appeals decision.

Notably, three members of our court dissented in part in *Harrington* on the ground that Iowa Code section 901A.2 requires a "conviction" of a sexually predatory offense. *Id.* at 442 (Neuman, J.,

concurring in part and dissenting in part, joined by Lavorato and Snell, JJ.). In their view, a conviction of an offense that was not per se sexually predatory, i.e., that took on that status only because of a special interrogatory answer, would not suffice. *See id.* However, the rationale of the *Harrington* dissent seems inapplicable here. In this case, the jury had to find the defendant intended to commit sexual abuse as an element of the underlying offense. No special interrogatory answer was required.[7]

In this case, the district court effectively disagreed with *Harrington* when it denied the enhancement. The court of appeals special concurrence followed a different line of thinking. It concluded that we are required to reconsider *Harrington* in light of the United States Supreme Court decision in *Apprendi.* Against that backdrop, we will examine again the *Harrington* holding.

It should be noted that shortly after *Harrington* was decided, the legislature amended chapter 901A. *See* 2000 Iowa Acts ch. 1030 (codified at Iowa Code § 901A.1 (2001)). As part of its amendment, the legislature struck the existing section 901A.1(1)(*b*), *see id.* ch. 1030, § 1, which had provided that sexually predatory offenses included

> *b.* A violation of any of the following if the offense involves sexual abuse, attempted sexual abuse, or intent to commit sexual abuse:
>
> (1) Murder as defined in section 707.1.
>
> (2) Kidnapping as defined in section 710.1.

---

[7]We do not understand the *Harrington* dissenters' point to be that the defendant must actually have been convicted of an attempt offense per se. There is no crime of "attempted sexual abuse" (or "attempted sexual exploitation of a minor," or "attempted pandering"). So if section 901A.1(1)(*e*) only applied if the defendant were actually convicted of something denominated as an attempt offense, it would seem to have no function.

(3) Burglary as defined in section 713.1.

(4) Child endangerment under section 726.6, subsection 1, paragraph "*e*".

*See* Iowa Code § 901A.1(*b*) (1999).

The legislature left in place the existing section 901A.1(1)(*e*), which provided that sexually predatory offenses included "[a]ny offense involving an attempt to commit an offense contained in this section." *See* Iowa Code § 901A.1(*e*) (2001). That was the section we had relied on to sustain the enhancement in *Harrington*, noting that sexual abuse was an offense "contained in this section" and the defendant had confined the victim with intent to commit sexual abuse. *See* 608 N.W.2d at 441.

One could argue that by eliminating the express coverage for kidnapping involving "attempted sexual abuse" or "intent to commit sexual abuse," the legislature meant to provide that kidnapping should *not* be considered a sexually predatory offense. However, another conclusion seems more likely: The legislature viewed Iowa Code section 901A.1(1)(*b*) as redundant in light of section 901A.1(1)(*e*). Significantly, the legislature did not disturb the *Harrington* holding that false imprisonment with intent to commit sexual abuse is a sexually predatory offense. It seems implausible that the legislature would want false imprisonment with intent to commit sexual abuse to be deemed a sexually predatory offense, but not the more serious crime of kidnapping with intent to commit sexual abuse. These changes to the statutory scheme therefore do not affect our willingness to apply *Harrington* to the present case.

We turn now to *Apprendi*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435. That sentencing-enhancement case arose when the defendant fired multiple bullets into the home of an African-American

family that had recently moved into his neighborhood. *Id.* at 469, 120 S. Ct. at 2351, 147 L. Ed. 2d at 442. Allegedly, the defendant made a statement at the time that he had done so because the family was black. *Id.* Under a plea agreement, the defendant pled guilty to possession of a firearm for an unlawful purpose. *Id.* at 469, 120 S. Ct. at 2352, 147 L. Ed. 2d at 442. In addition, after the trial judge conducted an evidentiary hearing, the judge imposed a hate-crime sentence enhancement, finding by a preponderance of the evidence that "the crime was motivated by racial bias." *Id.* at 470–71, 120 S. Ct. at 2352, 147 L. Ed. 2d at 443 (internal quotation marks omitted).

The defendant challenged the enhancement on appeal, urging that "the Due Process Clause of the United States Constitution requires that the finding of bias upon which his hate crime sentence was based must be proved to a jury beyond a reasonable doubt." *Id.* at 471, 120 S. Ct. at 2352, 147 L. Ed. 2d at 443. The Supreme Court agreed. It held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S. Ct. at 2362–63, 147 L. Ed. 2d at 455.

Thus, *Apprendi* makes clear that whether Walker committed an offense that involved an attempt to commit sexual abuse must be submitted to the jury and proved beyond a reasonable doubt. In *Harrington*, we equated a jury finding that the defendant had confined the victim with intent to abuse her with a determination he had attempted to commit sexual abuse. However, we did so without the benefit of *Apprendi*. Given the holding in *Apprendi*, we need to carefully review whether a jury finding that a defendant confined or removed a

victim with the intent to sexually abuse her is tantamount to a finding that he attempted to sexually abuse her.

As the State points out, Iowa does not have a general attempt statute. Instead, our law criminalizes attempts in certain circumstances, sometimes with a specific definition of "attempt" or "attempted." *See, e.g.*, Iowa Code § 707.11 (2013) (defining "[a]ttempt to commit murder"); *id.* § 713.2 (defining "[a]ttempted burglary"). As a result, our attempt law is relatively undeveloped.[8]

When our criminal law penalizes an "attempt," without a statutory definition, we have previously required

> (1) an intent to do an act or bring about certain consequences which would in law amount to a crime; and
>
> (2) an act in furtherance of that intent which . . . goes beyond mere preparation.

*State v. Spies*, 672 N.W.2d 792, 797 (Iowa 2003) (internal quotation marks and citations omitted) (applying this definition to the question whether the defendant committed an "attempted transfer" of a controlled substance). In another formulation, we said, "The common law principles of attempt require the State to prove (1) intent to commit the crime and (2) slight acts in furtherance of the crime that render voluntary termination improbable." *Fryer v. State*, 325 N.W.2d 400, 406 (Iowa 1982) (applying this standard to the question whether the defendant had committed "attempted robbery").

---

[8]One treatise has observed that the nature of the act required for an attempt conviction "is not made very clear by the language which has traditionally been used by courts and legislatures." 2 Wayne R. LaFave, *Substantive Criminal Law* § 11.4, at 218, Supp. 37 (2d ed. 2003 and Supp. 2013–2014). The author goes on to list four different approaches to this issue, some of which surface in our own cases analyzing attempts. *Id.* at 220–28, Supp. 37–39.

Going back further in time, in *State v. Roby*, we upheld a conviction for assault with intent to commit rape, which we treated as an attempt crime, explaining,

> In the instant case, defendant made preparation by enticing prosecutrix by signals to go to a secluded place where the act could be committed. They were on the ground in position to have intercourse. Her clothing was more or less disarranged. . . . These acts proximately led up to the consummation of the intended crime, and were overt acts.
>
> The [overt] act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. While it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.

194 Iowa 1032, 1043, 188 N.W. 709, 714 (1922) (internal quotation marks and citations omitted).

These three formulations are not exactly the same, but they have been quoted in other cases. *See, e.g., State v. Erving*, 346 N.W.2d 833, 835–36 (Iowa 1984) (applying both the *Fryer* and the *Roby* standards to the question whether the defendant had committed attempted burglary as defined in Iowa Code section 713.2).

In this case, we are tasked with determining if it is possible for someone to *confine or remove* another person with the *intent* to subject her to sexual abuse without actually committing an offense that involves an *attempt* to sexually abuse her. Otherwise stated, could the confinement or removal be a "mere preparation," *Spies*, 672 N.W.2d at 797, not an act that "render[s] voluntary termination improbable," *Fryer*, 325 N.W.2d at 406, or something other than a "step in a direct movement towards the commission" of sexual abuse, *Roby*, 194 Iowa at

1043, 188 N.W. at 714? The *Harrington* court concluded it was not possible, 608 N.W.2d at 441, and although we did not have the benefit of *Apprendi* at the time, our approach was consistent with *Apprendi.*

In *Harrington,* we did not discuss the specific facts of the case in deciding the enhancement issue. *See* 608 N.W.2d at 440. Instead, we held the jury's answer to the specific-intent interrogatory, combined with the false-imprisonment verdict, by themselves satisfied Iowa Code section 901A.1(1)(*e*)'s requirement that the defendant have committed an attempt to commit sexual abuse. *Id.* at 441. That is the precise approach that *Apprendi* dictates.

*Apprendi* does not establish a right to have a sentencing enhancement found by the jury. Rather, it establishes a right to have the underlying facts that support the enhancement found by the jury. As one court has put it,

> [The defendant] attempts to argue that *Apprendi* requires the actual sentence enhancement itself to be found by the jury. But that is not the law. The trial judge may impose the sentence enhancement once the jury has found all of the facts necessary to satisfy the elements of the sentencing-enhancement statute. *Apprendi* requires the jury to find not the sentence enhancement itself, but every **fact** required for the sentence enhancement to be imposed. The jury having found all of the necessary facts, the trial judge has the authority to impose the sentence.

*Taylor v. State*, 137 So. 3d 283, 287 (Miss. 2014).

Our general assembly has said that a conviction for an offense involving an attempt to commit sexual abuse warrants an enhanced sentence if the defendant had a prior conviction for a sexually predatory offense. In *Harrington,* we held that false imprisonment with intent to commit sexual abuse equated to an offense involving an attempt to commit sexual abuse. This is a logical reading of both section 901A.1(1)(*e*) and our precedents delineating the proof required for

criminal attempt. While an attempt to commit sexual abuse clearly requires more than just intent, we cannot conceive of a confinement or removal of a victim with the intent to sexually abuse her that would not be considered attempted sexual abuse.[9] Thus, the attempt to commit sexual abuse is inherent in the jury's verdict in the present case. *Apprendi* is satisfied because the facts amounting to attempted sexual abuse were found beyond a reasonable doubt by a jury.

### IV. Conclusion.

For these reasons, we adhere to our holding in *Harrington*. We therefore sustain the writ of certiorari, affirm the decision of the court of appeals, affirm Walker's conviction, vacate his sentence, and remand for further sentencing proceedings. As noted by the court of appeals, the district court did not decide whether Walker's Ohio conviction qualified as "a prior conviction for a sexually predatory offense." Iowa Code § 901A.2(3). In light of our disposition of this appeal, that issue now needs to be resolved.

**COURT OF APPEALS DECISION AFFIRMED, WRIT SUSTAINED, AND CASE REMANDED.**

---

[9]We note also that a California appellate court, in an unpublished opinion, has held that kidnapping for the purpose of rape is an attempt to commit a sexual offense under California law. *People v. Majors*, No. D037968, 2004 WL 2729758, at *7–8 (Cal. Ct. App. Dec. 1, 2004). As the court put it,

> A kidnapping for the purpose of rape is not a mere act of preparation. It demonstrates that the perpetrator is putting his plan into action and is necessarily an attempt to commit rape. Kidnapping for the purpose of rape is, therefore, a sexual offense within the meaning of section 1108.

*Id.* at *8.