# IN THE COURT OF APPEALS OF IOWA

No. 14-2175
Filed April 27, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRIAN CHRISTOPHER BROWN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Nancy S. Tabor (suppression motion and sentencing) and Paul L. Macek (bench trial), Judges.

        Brian Brown appeals his judgment and sentence for delivery and possession with intent to deliver marijuana. **AFFIRMED.**

        Kent A. Simmons, Bettendorf, for appellant.

        Thomas J. Miller, Attorney General, and Genevieve Reinkoester and Alexandra Link (until withdrawal), Assistant Attorneys General, for appellee.

        Heard by Danilson, C.J., and Vaitheswaran, Potterfield, Mullins, and McDonald, JJ. Tabor, J., takes no part.

**VAITHESWARAN, Judge.**

The State charged Brian Brown with delivery of marijuana and possession with intent to deliver marijuana.  Brown moved to suppress statements he made to officers after asserting his right to remain silent.  The district court denied the motion.  Following a bench trial, the court found Brown guilty as charged.

On appeal, Brown (1) challenges the sufficiency of the evidence supporting the district court's findings of guilt and (2) asserts the district court should have granted his motion to suppress.

## I.      Sufficiency of the Evidence

### A.      Delivery of Marijuana

The State was required to prove the following elements of delivery of marijuana: (1) On or about April 17, 2014, Brown delivered marijuana, and (2) Brown knew the substance he delivered was marijuana.  *See* Iowa Code § 124.401(1)(d) (2013).  "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance . . . ." *Id.* § 124.101(7).

The district court found as follows.  Bettendorf police officer Joshua Paul and a confidential source "made arrangements with [Brown] by telephone and text for the confidential source to purchase $20 worth of marijuana from [Brown]." Officer Paul "monitored the telephone call and recognized [Brown's] voice."  The location was arranged.  The "officer provided the confidential source with a $20 bill."  Officer Paul "made a copy of the $20 bill to document the precise bill to be used in this transaction" and verified that the confidential source did not have any drugs in his possession or in his vehicle.  The confidential source drove to the

agreed location, got into another vehicle in which Brown was a front-seat passenger, and stayed there for "approximately one minute." According to the court, "This was sufficient time to allow an exchange of cash for a small package." A police officer subsequently searched the confidential source and found marijuana. A later search of the home in which Brown was living uncovered "the $20 bill . . . Officer Paul provided to the confidential source."

Brown contends the State inappropriately relied on circumstantial rather than direct evidence to prove the delivery of marijuana. He points out that the State chose not to identify or call the confidential source or the driver of the vehicle in which Brown was seated, failed to make an "audio recording of the phone call" and "did not provide messages from texting." Brown faces a significant hurdle: "[c]ircumstantial evidence is" as "probative as direct evidence . . . to prove a defendant guilty beyond a reasonable doubt." *State v. Brubaker*, 805 N.W.2d 164, 172 (Iowa 2011). Indeed, "[i]n a given case, circumstantial evidence may be more persuasive than direct evidence." *Id.*

Even without the evidence cited by Brown, the State introduced substantial evidence to support the district court's findings. *See State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010) (setting forth the standard of review). Officer Paul testified he "recognized" Brown's voice from "multiple" interactions with him, and he matched the phone number dialed by the confidential source with Brown's known phone number. He characterized the transaction solidified during the call as the sale of "one gram of marijuana for $20" at a designated location. He "relayed this information" to Sergeant Doug Scott, searched the source and

his vehicle, gave the source the marked money, and followed the source to the designated location.

Officers believed Brown would arrive in a "white four-door car." He did. Sergeant Scott, who was already at the scene, testified he watched as the confidential source pulled into the lot. "Within minutes," a white car with two individuals inside "pulled in" and parked next to the confidential source's vehicle. Sergeant Scott was "[l]ess than 16 feet" away from both vehicles and his view was unobstructed. The confidential source "climb[ed] into the rear of the white vehicle." "[A]bout a minute went by [and] there was some movement around between the [front] passenger and the rear passenger." The confidential source returned to his vehicle. Later, the source met with Sergeant Scott and gave him "approximately 1.1 grams of marijuana." Sergeant Scott searched the source's vehicle and body and found no other money or narcotics. Meanwhile, Officer Paul "positively identif[ied] the front passenger as Brian Brown." Approximately one hour later, the white vehicle was located outside the home Brown shared with his parents.

Officers obtained a search warrant. They found Brown and seized his cell phone; it had the same phone number the confidential informant called a few days earlier. They also found a jar of "high-grade" marijuana in the home consistent with the marijuana sold to the confidential source. Near the marijuana, they found a digital scale. In a safe, they found a handgun and $2000, comprised primarily of $20 bills, including the marked $20 bill Officer Paul gave the confidential source.

The district court's fact findings, drawn almost verbatim from the officers' trial testimony, support the verdict on the charge of delivery of marijuana. While it is true the officers were situated too far away to witness the actual exchange of drugs for money, "proof of possession [by a defendant] is not necessary for proof of delivery." *State v. Spies*, 672 N.W.2d 792, 796 (Iowa 2003).

### B. *Possession of Marijuana with Intent to Deliver*

The State was required to prove: (1) On or about April 21, 2014, Brown knowingly possessed marijuana, (2) at the time Brown possessed the marijuana he knew it was marijuana, and (3) Brown possessed the marijuana with the intent to deliver it to someone else. *See* Iowa Code § 124.401(1)(d).

Brown does not challenge the first two elements but contends there is scant evidence of his intent to deliver the marijuana to someone else. The district court found otherwise. The court stated: "Given the amount of cash found in the safe with the marijuana and the handgun, and the fact he sold marijuana four days earlier, beyond a reasonable doubt the defendant possessed this marijuana with the intent to deliver it." *See State v. Adams*, 554 N.W.2d 686, 692 (Iowa 1996) ("Intent [to deliver] may be inferred . . . from large amounts of unexplained cash, as well as from the quantity of drugs." (citations omitted)); *State v. Wilson*, No. 14-0775, 2015 WL 1546451, at *5 (Iowa Ct. App. Apr. 8, 2015) ("'[T]he presence of a large sum of unexplained cash in connection with other evidence of drug trading is probative of the previous occurrence of drug transaction,' and thus, intent to distribute." (citations omitted)). This determination is supported by substantial evidence, as summarized above.

## II. Suppression Ruling

Brown contends the district court should have granted his motion to suppress statements he made to law enforcement officers. The following facts are relevant to this issue.

After officers obtained the search warrant, they found Brown cycling away from his home. They detained and handcuffed him and placed him in one squad car, then another. Officer Paul told Brown "he was not under arrest but he was being detained for the drug investigation." He gave Brown a *Miranda*[1] rights sheet. Brown signed the sheet and checked boxes indicating "Yes" he understood his Miranda rights, and "No" he did not want to talk to police officers. Officer Paul sought clarification as to whether Brown wished to talk to him. Brown responded by talking.

Brown argues Officer Paul failed to honor his Fifth Amendment right to remain silent. Our review of this issue is de novo.

"Once [*Miranda*] warnings have been given, the subsequent procedure is clear. If . . . individual[s] indicate[] in any manner, at any time prior to or during questioning, that [t]he[y] wish[] to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473-74. Officers must "scrupulously honor[]" this request. *Michigan v. Mosley*, 423 U.S. 96, 104 (1975).

We need not decide whether Officer Paul scrupulously honored Brown's unambiguous assertion of his right to remain silent. *See id.* at 104 (finding no violation of Mosley's right to cut off questioning where "[w]hen Mosley stated that

---

[1] In *Miranda v. Arizona*, 384 U.S. 436, 468, 478-79 (1966), the United States Supreme Court required police to inform suspects subject to custodial interrogation of certain rights, including "the right to remain silent."

he did not want to discuss the robberies, [the detective] immediately ceased the interrogation and did not try either to resume the questioning or in any way to persuade Mosley to reconsider his position"); *State v. Palmer*, 791 N.W.2d 840, 848 (Iowa 2010) (noting the interrogation "promptly terminated" after Palmer refused to sign a form waiving his *Miranda* rights). Even if he violated Brown's Fifth Amendment right to remain silent, we agree with the State that "[a]ny potential error was harmless as [Brown] did not make inculpatory statements and the court did not consider his statements in finding him guilty."

"The erroneous admission of evidence in violation of a defendant's Fifth . . . Amendment rights is . . . a constitutional error subject to harmless error analysis." *State v. Peterson*, 663 N.W.2d 417, 430 (Iowa 2003). "To establish harmless error, the State must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 431 ("The inquiry is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (citation omitted)).

Brown's garrulous exchange with Officer Paul included an admission to personal use of marijuana but also included repeated denials of actual delivery or the intent to deliver marijuana. His statements were non-inculpatory and could not have contributed to the verdict. But even if the district court could have gleaned something inculpatory in Brown's statements, the court charged with entering the verdict refused to take the statements into account. The trial court categorically stated, "For the purposes of this verdict, the defendant's statements which were the subject of the motion to suppress were not considered." In light

of this pronouncement, no speculation is required to conclude the verdict "was surely unattributable to the error" in admitting Brown's statements. The error was harmless.

We affirm Brown's judgment and sentence for delivery and possession with intent to deliver marijuana.

**AFFIRMED.**