# IN THE COURT OF APPEALS OF IOWA

No. 17-1332
Filed July 18, 2018

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**MICHAEL SHAWN BALL,**
　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

Michael Ball appeals his convictions for conduct with a minor, and he appeals provisions in his judgment and sentence. **CONVICTIONS AFFIRMED, SENTENCE AFFIRMED IN PART AND VACATED IN PART, AND REMANDED FOR ENTRY OF A CORRECTED SENTENCE.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**VOGEL, Presiding Judge.**

Michael "Wally" Ball appeals his convictions for enticing a minor, supplying alcohol to a minor, indecent exposure, and invasion of privacy. He argues the evidence is insufficient to prove he committed enticement. He also argues the district court abused its discretion in refusing to exclude the testimony of his former wife, Beth Ball, and it erred in imposing sexual abuse victim surcharges and special conditions of probation and in ordering appellate attorney fees unless he filed a request for a hearing on his ability to pay. We find sufficient evidence supports Ball's conviction for enticement. We also find the district court did not abuse its discretion in permitting Beth to testify, and the court did not err in imposing special conditions or in stating Ball may be assessed appellate attorney fees at a later date subject to his reasonable ability to pay. However, the district court erred in imposing sexual-abuse-victim surcharges under Iowa Code section 911.2B (2014), and we remand for the limited purpose of entering a corrected sentence without the surcharges.

## I.        Background Facts and Proceedings

A.G. was born in October 2000 and the acts she alleged to have occurred were in and around May 2014. At the time, A.G. lived in Dubuque near L.B., who lived with her father, Michael Ball,[1] and her mother, Beth Ball. A.G. testified she and L.B. "were like sisters" and they hung out together almost every day.

During the time at issue, A.G. had a personal cell phone with over one hundred contacts, including numbers for her friends and some friends' parents.

---

[1] Ball was born on March 15, 1964.

One contact was a phone number associated with Ball, and she never received a call from anyone other than Ball from this number. A.G. testified she saw Ball with the phone associated with this contact and he always kept it with him or locked in his bedroom. Beth testified Ball's phone previously belonged to their son, who no longer lived with them. Additionally, Beth had a personal cell phone, L.B. had a personal phone that could make calls using Wi-Fi but did not have cellular service, and their home had a landline phone. Beth testified they occasionally punished L.B. by taking her phone, and L.B. had once hid Beth's phone for a week.

At trial, A.G. testified Ball began acting inappropriately with her in May 2014. She related two notable incidents that occurred around May 28. In the first incident—the living room incident—A.G. was in Ball's living room while L.B. was on the computer a few feet away. She looked in a living room mirror and saw a reflection of Ball standing down the hall in his bedroom doorway masturbating, stroking his penis with his hand. A.G. believed his actions were aimed at her because he was looking at the same mirror, L.B. could not see him from her position, and no one else was in the home at the time. The incident upset her, but she did not tell an adult about the living room incident at the time "[b]ecause I was young and I didn't know what to do. I thought if I told someone, it would ruin their family, and I loved [L.B.] too much to create that divide between her family."

In the second incident—the bedroom incident—A.G. and L.B. entered Ball's home after they had just bought new clothes. While L.B. took a shower, A.G. yelled to her, "I'm just going to change in your room and try on those clothes." A.G. then entered L.B.'s bedroom, locked the bedroom door, and began changing. Soon after, Ball opened the bedroom door, entered the room when A.G. was not wearing

pants or underwear, and masturbated with his penis in his hand while he stared at her. She screamed for L.B., and Ball pulled up his pants and left the room like nothing had happened.

A.G. testified Ball exposed himself to her other times too. For example, he would lie in his bed and masturbate to pornography with his door open when he knew she was in the home. She believed these incidents were a way to get her attention, and there were "[t]oo many" incidents to put a number on.

A.G. testified Ball also provided alcohol to her and L.B. during summer 2014. Once, she sent him a text message that said "[I]f you don't buy us alcohol, [then] I will report you to your wife and tell her everything that you have been doing." He "seem[ed] excited" by the request and asked for "[s]exual favors" in return.

At trial, the State produced a series of text messages A.G had provided that came to her from the phone number associated with Ball between 10:42 p.m. on May 28, 2014, and 7:06 a.m. on May 29.[2] One message said, "nice view tonight[ ]very exciting dont you think?" She believed this message referred to the living room incident. Another message said, "it was nice seeing hair on your pussy when I walked in by accident today.[ ]remember erase these i will do what you want." She believed this message referenced the bedroom incident, though she did not believe the incident was an accident. Other messages requested a nude photo of

---

[2] At trial, A.G. was unsure when the living room incident and the bedroom incident occurred in relation to the text messages of May 28 and 29, 2014. She testified the living room incident occurred before the bedroom incident, and the living room incident happened the same day she received the text messages. Additionally, she testified the bedroom incident occurred both before she received the text messages and later that summer. She further testified she may have confused the bedroom incident with another incident, and the incidents had continued for a while into the summer.

her, asked about her sexual experiences, and said "guess what i am doing right now," "what do i get for getting you alcohol? head?" and "[I] wish you would come down and watch me shoot a load[ ]right now." She testified the messages made her feel "[d]isturbed" and "embarrassed," and she viewed them "as a type of invitation." She testified he had sent her more messages than those introduced at trial and she had responded to some of his messages.

In February 2015, L.B. called A.G. and asked her to show the text messages to Beth. A.G.'s mother overheard the call, looked at the messages, and called the police. Some time before the investigation, A.G. testified she had deleted all of the original messages Ball had sent and her responses because "[t]hey were painful to keep." However, she kept screenshots—digital photographs of her screen—of Ball's messages to her on May 28 and 29, 2014, and she emailed the screenshots to the police. The screenshots do not include the sending phone number, though they show they came from the contact associated with Ball's phone that A.G. had programmed into her phone.

Ball voluntarily spoke to Dubuque police officer Brendan Welsh during the investigation. Officer Welsh testified Ball was deflective during the interview. Ball said he did not recognize the number that sent the messages to A.G., but he also said the number belonged to a community phone that anyone in his house could have used. He said he had destroyed the phone he used during the time at issue, and he would not say where the broken phone was. He said L.B. and her friends had been extorting him for alcohol. Officer Welsh later subpoenaed records from Ball's phone provider. While the records do not include the actual text messages, the records confirm the phone suspected to have been used by Ball had sent

messages to A.G.'s phone at the times indicated on the screenshots A.G. provided.[3]

The State charged Ball with enticing a minor under the age of sixteen, in violation of Iowa Code section 710.10(2); supplying alcohol to a person under the legal age, in violation of section 123.47; indecent exposure, in violation of section 709.9; and invasion of privacy, in violation of section 709.21. The parties reached a plea agreement, resulting in the entry of judgment and sentence on July 22, 2015. Ball appealed, arguing his plea agreement was not voluntary, and this court vacated the judgment and sentence and remanded for further proceedings. *See State v. Ball*, No. 15-1319, 2016 WL 1697071 (Iowa Ct. App. Apr. 27, 2016).

On remand, the district court reinstated all four counts. On April 25, 2017, Ball's trial commenced. Ball objected when the State called Beth as a witness at trial because the State first filed minutes of evidence for her appearance on April 18—less than ten days before trial. The State responded that they had talked to Ball on several occasions about their intent to call Beth as a witness, and they had only recently obtained her address. The district court found her appearance was not a surprise to Ball, and it noted he did not object to her appearance until the State called her at trial and he had never asked to depose her. Accordingly, the court allowed her to testify limited to the matters addressed in the minutes for her testimony—specifically the family circumstances and the phones used in the

---

[3] The times shown in the phone records and the screenshots are one hour apart, which officer Welsh attributed to the fact that Michael's phone provider and A.G.'s phone were in different time zones.

household. After the State rested at trial, Ball made an oral motion for judgment of acquittal on all counts, which the court summarily denied.

On April 27, 2017, the jury convicted Ball of all four counts. On June 8, Ball filed a "Motion in Arrest of Judgment" and a "Motion for a New Trial," which raised several grounds including insufficient evidence of enticement. On August 16, the court denied Ball's post-trial motions in a single order. On August 21, the court entered judgment and sentence for Ball. For Count I (enticement), the court sentenced him to a term of incarceration of five years, which was fully suspended; placed him on probation for a period of five years; and imposed fines and surcharges. For each of Counts II, III, and IV, the court sentenced him to a term of incarceration of 180 days, of which 100 days were suspended; placed him on probation for a period of two years; and imposed fines and surcharges. The court placed special conditions on his probation, including: "Obtain a substance abuse evaluation and comply with treatment recommendations"; "Abstain from the consumption of alcohol and illegal substances"; and "Be subject to random drug testing." Counts II, III, and IV were concurrent with each other but consecutive to Count I. Among other provisions, the court imposed "a $100 surcharge on Counts III and IV pursuant to Iowa Code § 911.2b(1)." The court concluded with a statement regarding any potential appeal:

> The Defendant is advised that if he appeals this ruling, he may be entitled to court-appointed counsel to represent him in an appeal. The Defendant is advised that if he qualifies for court-appointed appellate counsel, then he can be assessed the cost of the court-appointed appellate attorney when a claim for such fees is presented to the clerk of court following the appeal. The Defendant is further advised that he may request a hearing on his reasonable ability to pay court-appointed appellate attorney fees within 30 days of the issuance of the procedendo following the appeal. If the Defendant

does not file a request for a hearing on the issue of his reasonable ability to pay court-appointed appellate attorney fees, the fees approved by the State Public Defender will be assessed in full to the Defendant.

Ball now raises several arguments on appeal: (1) the evidence is insufficient to prove he committed enticement; (2) the district court abused its discretion in allowing Beth to testify after the State failed to provide minutes of evidence for her testimony at least ten days prior to trial; (3) the imposition of sexual abuse victim surcharges was an illegal sentence; (4) the imposition of special conditions of probation was an illegal sentence; and (5) the district court erred in ordering the assessment of appellate attorney fees unless he filed a request for a hearing on his reasonable ability to pay.

## II. Standard of Review

We review claims of insufficient evidence for corrections of errors at law. *State v. Kern*, 831 N.W.2d 149, 158 (Iowa 2013). "The essential question before the court on a challenge to sufficiency of the evidence is whether there was substantial evidence to support a guilty verdict beyond a reasonable doubt." *Id.* We review evidentiary rulings, including the admissibility of a witness, for abuse of discretion. *State v. Richards*, 809 N.W.2d 80, 89 (Iowa 2012). We review claims of an illegal sentence for correction of legal errors. *State v. Lyle*, 854 N.W.2d 378, 382 (Iowa 2014). We ordinarily review restitution orders for abuse of discretion, but we review constitutional issues de novo. *State v. Dudley*, 766 N.W.2d 606, 626 (Iowa 2009); *State v. Van Hoff*, 415 N.W.2d 647, 648 (Iowa 1987).

### III.     Insufficient Evidence

Ball claims the evidence is insufficient to prove he enticed a minor under Iowa Code section 710.10.  He notes the State charged him with—and the court convicted him of—enticement and not attempted enticement.

As an initial matter, the State argues Ball has not preserved error on his claim of insufficient evidence.  "To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal." *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004).  Ball orally moved for judgment of acquittal during trial, but this motion cannot preserve error because neither the motion nor the court's response specified insufficient evidence as an issue.  After trial, he filed a "Motion for a New Trial" that raised an insufficient-evidence claim.  This motion only explicitly requested a new trial and did not mention acquittal; however, the district court noted Ball filed "a motion in arrest of judgment and a motion for new trial" following trial, and the court fully responded to Ball's insufficient-evidence arguments in a single post-trial order.  *See Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002) ("[W]e treat a motion by its contents, not its caption.").  Because his post-trial motion was sufficiently detailed to alert the district court that he requested a judgment of acquittal on the grounds of insufficient evidence, Ball has preserved error on appeal.  *See Truesdell*, 679 N.W.2d at 615.

A person is guilty of enticing a minor "when without authority and with the intent to commit an illegal sex act upon or sexual exploitation of a minor under the age of sixteen, the person entices or attempts to entice a person reasonably believed to be under the age of sixteen."  Iowa Code § 710.10(2).  The person

must commit "an overt act evidencing a purpose to entice." *Id.* § 710.10(5). "'Entice' is defined as 'to draw on by arousing hope or desire' or 'to draw into evil ways.' Synonymous words include 'allure,' 'attract,' and 'tempt.'" *State v. Hansen*, 750 N.W.2d 111, 114 (Iowa 2008) (quoting *State v. Osmundson*, 546 N.W.2d 907, 909 (Iowa 1996)).

Under the previous version of the statute, a person was guilty of enticing a minor only if "the person *entices away* a minor." Iowa Code § 710.10(2) (2008) (emphasis added). Our supreme court found significance in the former statute's use of "away," distinguishing between enticement—which was criminalized under former section 710.10(2)—and attempted enticement—which was not criminalized under former section 710.10(2):

> As we said in *Osmundson*, the word "'entice' focuses on the actions of the defendant; it does not matter what the victim thought." [546 N.W.2d at 910.] For example, if a defendant with the intent to molest a child asks that child to help him find his puppy, it does not matter what the child thought was going to happen if she went with the defendant. However, the phrase "entices away" requires the fact finder to look not only to the actions and conduct of the defendant but also to the impact of those actions upon the victim. A perpetrator entices, but it is the victim who is enticed away. Thus, under our example, the defendant is guilty of enticement if the child goes with the defendant and guilty of attempted enticement if the child runs away from the defendant.

*Hansen*, 750 N.W.2d at 114.

In 2010, the Iowa legislature amended section 710.10 into the version at issue here. *See* 2010 Iowa Acts ch. 1129. Among the changes, the legislature deleted "away" and added "or attempts to entice" to section 710.10(2). *Id.* Thus, the legislature addressed our supreme court's decision in *Hansen* while retaining enticement and attempted enticement as distinct offenses. *See id.*; *see also* H.F.

2438, 83d G.A., 2d Sess. explanation (Iowa 2010) ("The amendments in the bill are in response to *State v. Hansen*, 750 N.W.2d 111 (Iowa 2008) . . . .").

Ball argues the difference between enticement and attempted enticement depends on whether the minor accepts the enticement offer.  This is consistent with the court's decision in *Hansen*, 750 N.W.2d at 114 ("[T]he defendant is guilty of enticement if the child goes with the defendant and guilty of attempted enticement if the child runs away from the defendant.").  However, Ball's argument overlooks the subsequent statutory changes in response to *Hansen*.  *See* 2010 Iowa Acts ch. 1129.  The statute at issue here focuses "enticement" on the actions of the defendant without regard to whether the minor was enticed "away."  *See* Iowa Code § 710.10(2) (2014).  Therefore, the minor is not required to accept the enticement offer in order for the defendant to commit enticement.

Ball responds that the difference between enticement and attempted enticement disappears without a requirement that the minor accept the offer.  Attempted enticement is not defined in section 710.10, but generally an attempted crime requires "(1) intent to commit the crime and (2) slight acts in furtherance of the crime that render voluntary termination improbable."  *State v. Walker*, 856 N.W.2d 179, 187 (Iowa 2014).  The State and the district court suggest attempted enticement may occur when a defendant sends enticing messages to a minor with the needed intent but the messages never reach the minor, possibly because a police officer was posing as a minor or a parent intercepted the messages.[4]

---

[4] Ball notes the court in *State v. Hansen* explicitly said they do not believe attempted enticement includes a situation where a defendant reaches out to a minor with the needed intent but fails to contact the minor.  750 N.W.2d 111, 113 n.1 (Iowa 2008).  However, this dictum involved the previous version of section 710.10.  Therefore, we do not rely on it in

However, we find it is neither necessary nor appropriate to speculate on whether hypothetical situations would qualify as enticement or attempted enticement. *See Hartford-Carlisle Sav. Bank v. Shivers*, 566 N.W.2d 877, 884 (Iowa 1997) ("This court has repeatedly held that it neither has a duty nor the authority to render advisory opinions."). Instead, we only conclude that enticement under section 710.10(2) does not require the minor to accept the offer. Attempted enticement may occur if the defendant performs a slight act in furtherance of enticement with the needed intent. *See Walker*, 856 N.W.2d at 187.

Accordingly, section 710.10(2), as amended at the time, focuses "enticement" on the actions of the defendant without regard to whether the minor was enticed "away." *See also Hansen*, 750 N.W.2d at 114. Under this standard, the evidence is sufficient for the jury to conclude Ball committed enticement. A.G. testified Ball had repeatedly engaged in sexual behavior directed at her. He watched pornography, exposed himself, and masturbated in her presence. He walked into a locked room while she was changing clothes. She received text messages from his phone that explicitly asked about sexual activity, and she believed these messages were an "invitation" from him. The State presented phone records corroborating the times of the text messages, and testimony established Ball kept his phone in his exclusive control. From this evidence, the jury could conclude Ball sent the text messages to A.G. in order to entice—or "allure," "attract," or "tempt." *See id.* Furthermore, the jury could conclude Ball sent the enticing text messages with the intent to commit an illegal sex act upon

---

finding such a situation could never qualify as attempted enticement under amended section 710.10.

her and not to simply entice her to engage in a non-sexual activity such as riding in his car to purchase alcohol. These text messages are the required overt act showing his purpose to entice. *See* Iowa Code § 710.10(5). Finally, the other elements of enticement, including the fact A.G. was under the age of sixteen at the time, are not in doubt. *See id.* § 710.10(2). Therefore, the evidence is sufficient to prove Ball committed enticement.

## IV. Witness Testimony

Ball argues the district court abused its discretion by allowing Beth to testify even though the State first filed minutes of evidence for her appearance less than ten days prior to trial. The State may offer a witness "if the prosecuting attorney has given the defendant's attorney of record . . . a minute of such witness's evidence . . . at least ten days before the commencement of the trial." Iowa R. Crim. P 2.19(2). If the State does not provide notice of the witness at least ten days before trial, the court may enter an "order as it deems just under the circumstances," such as permitting discovery or granting a continuance. Iowa R. Crim. P. 2.19(3). The court may exclude the testimony of the witness only "if it finds that no less severe remedy is adequate to protect the defendant from undue prejudice." *Id.*

Even though the State provided minutes of evidence for Beth's testimony only seven days prior to trial, the court found her appearance and the contents of her anticipated testimony should not have surprised Ball. The court noted Ball failed to object to her testimony despite multiple opportunities, and he never requested to depose her. The court ultimately allowed Beth to testify to the matters included in the minutes of evidence for her appearance. Under these

circumstances, the court did not abuse its discretion in allowing her to testify despite the late minutes for her testimony. *See id.*

### V. Sexual Abuse Victim Surcharges

Ball argues the court imposed an illegal sentence when it imposed sexual abuse victim surcharges under section 911.2B. Section 911.2B took effect on July 1, 2015, after Ball committed the charged offenses. 2015 Iowa Acts ch. 96, §§ 15, 17. Thus, the State concedes the surcharges are unconstitutional here. *See State v. Lopez*, 907 N.W.2d 112, 123 (Iowa 2018) ("[T]he imposition of the section 911.2B surcharge for conduct occurring prior to the July 1, 2015 effective date violates the Ex Post Facto Clauses of the Iowa and United States Constitutions."). Therefore, we vacate the part of his sentence imposing section 911.2B surcharges and remand for entry of a corrected sentence.

### VI. Special Conditions of Probation

Ball argues the district court imposed an illegal sentence when it imposed special conditions of probation related to illegal drugs and alcohol. When imposing probation, the district court may impose "any additional reasonable conditions . . . to promote rehabilitation of the defendant or protection of the community." Iowa Code § 907.6. These conditions "must not be unreasonable or arbitrary." *State v. Lathrop*, 781 N.W.2d 288, 299 (Iowa 2010). "A condition is reasonable when it relates to the defendant's circumstances in a reasonable manner and is justified by the defendant's circumstances." *Id.* The "defendant's background and history is also relevant when determining the conditions of probation." *State v. Valin*, 724 N.W.2d 440, 447 (Iowa 2006).

Ball argues none of the convictions at issue involve drug or alcohol use by him. However, he was convicted of providing alcohol to a minor, and the text messages and A.G.'s testimony indicated he wanted to provide the alcohol in exchange for sex. Furthermore, he was previously convicted in 2010 of operating a motor vehicle while intoxicated and possession of a controlled substance. For his presentence investigation report, he also reported drug and alcohol abuse beginning in his teenage years and continuing on-and-off until 2010. Considering the involvement of alcohol in the convictions at issue, his prior convictions for drug and alcohol offenses, and his self-reported history of on-and-off drug and alcohol abuse, the court did not err in in imposing the special conditions of probation related to illegal drugs and alcohol. *See Lathrop*, 781 N.W.2d at 299.

**VII.    Assessment of Appellate Attorney Fees**

Ball argues the district court erred in its judgment and sentence when it ordered him to pay appellate attorney fees unless he requested a hearing on the issue of his reasonable ability to pay. Ball correctly notes that, regardless of whether a defendant requests a hearing, "[a] cost judgment may not be constitutionally imposed on a defendant unless a determination is first made that the defendant is or will be reasonably able to pay the judgment." *Dudley*, 766 N.W.2d at 615. However, the provision in the judgment and sentence regarding appellate attorney fees is not an order to pay fees; rather, it merely summarizes the law and alerts Ball he may be required to pay appellate attorney fees for any possible appeal. If "the district court assesses any future attorney fees on [Ball's] case, it must follow the law and determine the defendant's reasonable ability to

pay the attorney fees without requiring him to affirmatively request a hearing on his ability to pay." *State v. Coleman*, 907 N.W.2d 124, 149 (Iowa 2018).

### VIII. Conclusion

Sufficient evidence supports Ball's conviction for enticement. The district court did not abuse its discretion in permitting Beth to testify even though the State first filed minutes of evidence for her appearance less than ten days before trial. The court did not err in imposing special conditions of probation related to illegal drugs and alcohol, nor did the court err in stating Ball may be assessed appellate attorney fees at a later date subject to his reasonable ability to pay. However, the court erred in imposing sexual abuse victim surcharges under section 911.2B, and we remand for the limited purpose of entering a corrected sentence without the surcharges.

**CONVICTIONS AFFIRMED, SENTENCE AFFIRMED IN PART AND VACATED IN PART, AND REMANDED FOR ENTRY OF A CORRECTED SENTENCE.**