# In the Iowa Supreme Court

---

No. 25–0819

---

Submitted April 21, 2026—Filed June 19, 2026

---

**State of Iowa,**

Appellant,

vs.

**Kevin Charles Lind,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, David Nelmark (motion to dismiss) and Paul D. Scott (motion to adjudicate law points and motion to reconsider), judges.

The State appeals the dismissal of a human trafficking charge under Iowa Code section 710A.2 (2024). **Affirmed.**

May, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General, and Louis S. Sloven (argued), Assistant Attorney General, for appellant.

Jonathan M. Causey (argued) of Causey & Ye Law, P.L.L.C., Des Moines, and Paul J. Statler of Babich Sarcone, P.L.L.C., Des Moines, for appellee.

**May, Justice.**

Under the 2024 version of Iowa Code section 710A.2(1) (2024), it was a class "A" felony, punishable by life without parole, to "knowingly engage[] in human trafficking" if the "victim" was "under the age of eighteen." "Victim" was defined to mean "[a] person subjected to human trafficking." *Id.* § 710A.1(13). And "human trafficking" was defined to include "participating in a venture"—a group of two or more associated persons—"to recruit . . . or obtain" a minor victim for the purpose of a "[c]ommercial sexual activity," such as prostitution. *Id.* § 710A.1(4)(*a*)(2). There was also an alternative definition, under which "human trafficking" meant "knowingly purchasing or attempting to purchase services involving commercial sexual activity from a victim or another person engaged in human trafficking." *Id.* § 710A.1(4)(*b*).

In this case, the State alleges that the defendant's acts fit within the alternative definition of human trafficking because he allegedly "knowingly . . . attempt[ed] to purchase services involving commercial sexual activity from a victim or another person engaged in human trafficking." *Id.* It is undisputed, however, that the defendant never negotiated for sexual services with any "victim or another person engaged in human trafficking." *Id.* Rather, the defendant unknowingly negotiated with an undercover police officer. And although the defendant *thought* he was negotiating for sexual services with a minor named "Destini," there was never a real person named Destini who was subjected to human trafficking or otherwise available for sex with the defendant. Instead, Destini was wholly imaginary. Although the defendant saw photos of Destini, they were really age-regressed photos of another police officer.

The district court dismissed the human trafficking charge, and the State now appeals. Two questions are presented. First, under the 2024 version of the

statute, could the defendant have knowingly engaged in human trafficking if he only *falsely believed* that a supposed vendor was a "person engaged in human trafficking" when in fact the supposed vendor *was not* so engaged? *Id.* Second, could the defendant have knowingly engaged in human trafficking if he *falsely believed* that there was an available victim—"a person subjected to human trafficking"—when in fact there *was not* such a person? *Id.* § 710A.1(4)(*b*), (13).

We answer both questions in the negative, and we affirm the district court's dismissal. In the interest of clarity, though, we emphasize that our holding in this case is limited to the 2024 version of sections 710A.1 and 710A.2. As will be explained, in 2025, the legislature amended section 710A.1 to expressly permit prosecutions like this one. The 2025 amendment expanded the definition of victim to include "[a] law enforcement officer or agent posing as a person subjected to or a target for human trafficking." 2025 Iowa Acts ch. 97, § 2 (codified at Iowa Code § 710A.1(13)(*c*) (2026)). Also, the 2025 amendment expanded the definition of human trafficking to include "knowingly . . . attempting to purchase services involving commercial sexual activity . . . from a law enforcement officer or agent posing as a person engaged in human trafficking." *Id.* § 1 (codified at Iowa Code § 710A.1(4)(*b*) (2026)). Thus, under the amended 2025 version of section 710A.1, the acts alleged here would likely fall within the definition of human trafficking. But under the pre-amendment statute that governs this case, we reach the opposite conclusion.

### I. Factual and Procedural Background.

**A. The Relevant Statute.** Because this case is primarily about statutory interpretation, we start with the governing statutes. The governing statutes are Iowa Code section 710A.2(1)—which provides that "[a] person who knowingly engages in human trafficking is guilty of a class 'B' felony, except that if the

victim is under the age of eighteen, the person is guilty of a class 'A' felony"—and section 710A.1, which defines human trafficking and other related terms. We sometimes refer to these provisions collectively as "the human trafficking statute."

Our main focus is the definition of human trafficking in section 710A.1(4). Two alternative definitions are provided. First, in subsection (4)(*a*), the statute says:

> 4. *a.* *"Human trafficking"* means participating in a venture to recruit, harbor, transport, supply provisions, or obtain a person for any of the following purposes:
>
> (1) Forced labor or service that results in involuntary servitude, peonage, debt bondage, or slavery.
>
> (2) Commercial sexual activity through the use of force, fraud, or coercion, except that if the trafficked person is under the age of eighteen, the commercial sexual activity need not involve force, fraud, or coercion.

*Id.* § 710A.1(4)(*a*). Then, subsection (4)(*b*) adds:

> b. *"Human trafficking"* also means knowingly purchasing or attempting to purchase services involving commercial sexual activity from a victim or another person engaged in human trafficking.

*Id.* § 710A.1(4)(*b*).

Several other terms are also specially defined in section 710A.1. Here are some relevant examples:

- The term "venture" is defined to mean "any group of two or more persons associated in fact, whether or not a legal entity." *Id.* § 710A.1(12).

- The term "commercial sexual activity" is defined to include "any sex act . . . for which anything of value is given, promised to, or received by any person and includes, but is not limited to, prostitution." *Id.* § 710A.1(1).

- The term "victim" is defined to mean "a person subjected to human trafficking." *Id.* § 710A.1(13).

**B. The Human Trafficking Charge.** In October 2024, the State charged Kevin Charles Lind with human trafficking as a class "A" felony in violation of Iowa Code section 710A.2(1).[1] The minutes of testimony alleged that Lind had offered a prostitute money if she would "find a friend who had a young girl he could" molest. The prostitute pretended that "she may know a mother" who would participate. The prostitute then went to the police. With guidance from the police, the prostitute put Lind in contact with a female undercover officer. Lind contacted the officer, who went by "Kami." Kami pretended to be involved in prostitution, and pretended to have a thirteen-year-old daughter named "Destini." Although Kami sent photos of Destini to Lind, they were fakes. In reality, they were age-regressed photos of a police officer. Destini wasn't a real person. Even so, Kami and Lind negotiated a plan that involved Destini. The plan was that Lind would meet Kami and Destini at a motel and pay them $1,300 in exchange for sex acts with each of them. Lind arrived at the motel at the appointed time with over $1,500 cash. He was arrested upon arrival.

Lind moved to dismiss the human trafficking charge. Lind argued that even if the facts alleged in the minutes were proven, they would not satisfy the statutory definition of human trafficking under section 710A.1(4). In particular, Lind argued:

- Because no one (except Lind) intended to engage in human trafficking, there could be no human trafficking "venture" for Lind to participate in.

---

[1] The same trial information also charged Lind with sexual exploitation of a minor, a class "C" felony under Iowa Code section 728.12(2). That charge was dismissed by the State.

*Id.* § 710A.1(12). Therefore, he could not have committed human trafficking as defined in Iowa Code section 710A.1(4)(*a*).

- Because Destini did not exist, there was no "victim," and he could not have "attempt[ed] to purchase" commercial sexual services "from a victim." *Id.* § 710A.1(4)(*b*). Therefore, he could not have committed human trafficking as defined in Iowa Code section 710A.1(4)(*b*).

- Because no one was actually "engaged in human trafficking," he could not have "attempt[ed] to purchase" commercial sexual services from "another person engaged in human trafficking." *Id.* Therefore, he could not have committed human trafficking as defined in Iowa Code section 710A.1(4)(*b*).

In an initial ruling, the district court granted Lind's motion in part. But when Lind reasserted his arguments in a subsequent motion, the district court agreed in full and dismissed the human trafficking charge. The district court also denied the State's motion to reconsider. The State appealed.

**II. Issues on Appeal and Standards of Review.**

The central issue on appeal is whether the district court was correct to dismiss the charge against Lind because his alleged conduct did not constitute human trafficking as defined in Iowa Code section 710A.1(4). We review statutory interpretation issues for correction of errors at law. *State v. Fredericksen*, 32 N.W.3d 12, 16 (Iowa 2026). We also review the grant of a motion to dismiss a criminal charge for correction of errors at law. *State v. Gonzalez*, 718 N.W.2d 304, 307 (Iowa 2006). "We accept the facts alleged by the State in the trial information and minutes as true, as we must, on a motion to dismiss." *State v. Bailey*, 2 N.W.3d 429, 436 (Iowa 2024). "We will reverse the trial court's dismissal of the charge at issue if the facts the State has alleged charge a crime

as a matter of law." *Gonzalez*, 718 N.W.2d at 307 (quoting *State v. Johnson*, 528 N.W.2d 638, 640 (Iowa 1995)).

Before reaching the merits issue, however, we address a procedural question raised by Lind. As mentioned, the district court initially granted Lind's motion to dismiss only in part; later, after Lind moved again, the district court dismissed the charge in full. Now, on appeal, the State asserts some arguments that the court rejected in its initial ruling. But Lind argues that this court lacks jurisdiction to address those arguments because the State failed to timely appeal after the initial, interlocutory ruling. Lind asserts that this failure constitutes the State's acceptance of the district court's initial ruling and, therefore, that ruling became the law of the case as to the arguments it addressed. We disagree. In criminal cases, the statute that authorizes appeals by the state is Iowa Code section 814.5(1). Under subsection (1)(*a*), the state may appeal from "[a]n order dismissing an indictment, information, or any count thereof." *Id.* § 814.5(1)(*a*). And our rules of appellate procedure add that "[a]n order disposing of some . . . issues in an action may be appealed within the time for appealing from the judgment that finally disposes of all remaining . . . issues to an action." Iowa R. App. P. 6.101(1)(*d*). Here, the initial district court order disposed of only some, not all, of the issues in the case. It was an interlocutory order. It did not create any law of the case because the district court was free to revisit it. *See State v. Richards*, 229 N.W.2d 229, 232–33 (Iowa 1975) ("[N]othing prevents the trial court from correcting the ruling at any time before final judgment."). And the State was under no obligation to appeal from it immediately. Rather, the State could appeal after the subsequent ruling, which disposed of the case entirely. The State did so. As a result, we have jurisdiction over the entire appeal, and we can consider all of the arguments presented by the State. *See* Iowa Code

§ 814.5(1)(*a*); Iowa R. App. P. 6.101(1)(*d*); *see also State v. Hightower*, 8 N.W.3d 547, 534 (Iowa 2024) ("[W]e have jurisdiction to decide all substantive issues raised by Hightower's appeal."); *State v. Rutherford*, 997 N.W.2d 142, 146 (Iowa 2023) ("Once good cause is established . . . as to one issue, we have *jurisdiction* over the entire appeal . . . ."); *State v. Wilbourn*, 974 N.W.2d 58, 66 (Iowa 2022) ("An appellate court either has jurisdiction over a criminal appeal or it does not.").

**III. Merits Analysis.**

**A. Framing the Issues.** Now we consider whether Lind's alleged conduct fell within Iowa Code section 710A.1(4)'s definition of human trafficking. The issue is narrowed considerably by the State's choice of arguments. For starters, the State does not argue that Lind's alleged conduct falls within subsection (4)(*a*)'s definition of human trafficking, which would require a showing that Lind "participat[ed] in a venture" to obtain "a person" for commercial sexual activity and, additionally, that said person was either "under the age of eighteen" or obtained "through the use of force, fraud, or coercion." *Id.* § 710A.1(4)(*a*)(2).

Instead, the State argues that Lind's conduct falls within subsection (4)(*b*), which defines "human trafficking" to "also mean[] knowingly purchasing or attempting to purchase services involving commercial sexual activity from a victim or another person engaged in human trafficking." *Id.* § 710A.1(4)(*b*). But the State does not allege that Lind "knowingly purchas[ed]" such services. *Id.* Rather, the State alleges only that Lind "knowingly . . . *attempt*[*ed*] to purchase services involving commercial sexual activity from a victim or another person engaged in human trafficking." *Id.* (emphasis added).

Significantly, though, the State has never claimed that Lind negotiated with or for the services of an actual victim, which the statute defines as "a person subjected to human trafficking." *Id.* § 710A.1(13). Additionally, the State has not claimed that Lind negotiated with anyone who was actually a "person engaged in human trafficking." *Id.* § 710A.1(4)(*b*).

These last points were central to the district court's determinations. The district court reasoned that because Lind was not involved with any person who was actually "engaged in human trafficking," he could not have "knowingly . . . attempt[ed] to purchase services involving commercial sexual activity from . . . [a] person engaged in human trafficking." *Id.* Likewise, there was no actual victim—no child being subjected to human trafficking—who might have sold or provided those services. Therefore, Lind could not have violated the statute.

The State disagrees. In the State's view, it does not matter whether or not an actual "victim" or other "person engaged in human trafficking" was involved. *Id.* Rather, the State argues, because the statute uses the word "attempting," all that matters is that (1) Lind believed there were such people involved, and (2) he acted on that belief by, among other things, driving to the hotel with money in his pocket. That was enough to constitute human trafficking, the State argues.

For the reasons explained below, we reject the State's arguments and affirm the district court.

**B. Interpreting the Statutory Text.**

1. *General principles.* We start with first principles. Under Iowa's constitution, there are three branches, or "departments," of government. Iowa Const. art. III, § 1. Each branch has different powers and responsibilities. *See id.* This division is especially salient in criminal cases. In Iowa, "[m]atters of crime

and punishment are creatures of statute," not the common law. *State v. Pagliai*, 30 N.W.3d 226, 228 (Iowa 2026); *see also State v. Campbell*, 251 N.W. 717, 719 (1933). And criminal statutes—like all statutes—are written by the people's elected lawmakers in the legislative branch. Statutes are not written by the judicial branch—the courts. Rather, courts *interpret* statutes. We *say what statutes mean* in the context of particular disputes, and then we apply that meaning as we "administer the criminal law in accord with legislative command." *Pagliai*, 30 N.W.3d at 228–29.

We find a statute's meaning in its text, the words that the legislature enacted. It is the "unremovable duty of the courts" to give those words "their fair meaning." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 233 (2012) [hereinafter Scalia & Garner, *Reading Law*]. We are assisted by traditional principles, or "canons," of interpretation. But no "canon of interpretation is absolute." *Id.* at 59. Each is simply a "guide[] to solving the puzzle of textual meaning." *Id.* And sometimes different canons "point in different directions." *Id.* In those cases, the court must exercise its best judgment to "assess[] the clarity and weight" of each interpretive clue and, ultimately, select the interpretation that best fits the legislature's chosen words. *Id.*; *see also Anderson v. Iowa Dist. Ct.*, 989 N.W.2d 179, 183 (Iowa 2023) (comparing multiple canons).

2. *Two plausible alternatives.* We now turn to the task of interpreting the statutory phrase at issue here—"knowingly . . . attempting to purchase services involving commercial sexual activity from a victim or another person engaged in human trafficking." Iowa Code § 710A.1(4)(*b*). As will be explained, in the present context, this phrase seems to have two plausible interpretations.

a. *Ordinary meaning.* As usual, we begin our interpretive work with the ordinary-meaning canon, "the most fundamental semantic rule of interpretation." Scalia & Garner, *Reading Law* at 69. This means that statutory words are usually "understood in their ordinary, everyday meanings," *id.*, "in the context within which they are used," *Kelchner v. CRST Expedited Inc.*, 29 N.W.3d 315, 324 (Iowa 2025) (quoting *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 168 (Iowa 2016)); *see also Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014). This point about context is crucial because, of course, words can have different meanings in different contexts. So, at a minimum, we must not read words "in isolation but together with the words that surround [them]." *State v. Meisheid*, 26 N.W.3d 800, 803 (Iowa 2025); *see also Doe v. State*, 943 N.W.2d 608, 613 (Iowa 2020) ("[W]e read statutes as a whole rather than looking at words and phrases in isolation." (alteration in original) (quoting *Iowa Ins. Inst. v. Core Grp. of the Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015))). Indeed, although a word might seem ambiguous when read in isolation, its proper meaning may become clear when it is read together with adjoining words "in ordinary, idiomatic ways." Scalia & Garner, *Reading Law* at 70–71 (discussing different ways in which the words "kite" and "check" are combined in everyday language).

Applying this ordinary-meaning approach, the phrase at issue—"attempting to purchase services involving commercial sexual activity from a victim or another person engaged in human trafficking"—is most naturally read to mean that there must be an actual "victim" or other "person engaged in human trafficking." Iowa Code § 710A.1(4)(*b*). And because there was no actual "victim" or other "person engaged in human trafficking" in Lind's pretend transaction, the phrase does not apply to him, and he could not violate the statute. *Id.*

b. *Technical or legal meaning.* As the State points out, though, our usual ordinary-meaning approach will yield if "the context indicates that" the words at issue "bear a technical sense." Scalia & Garner, *Reading Law* at 69. Indeed, we regularly say that when words have acquired a technical meaning in the law, the legal meaning applies. *See, e.g., Green Belt Bank & Tr. v. Van Mill*, 32 N.W.3d 437, 442–44 (Iowa 2026). We say that if "a word is obviously transplanted from another legal source, whether the common law or other legislation," that word usually "brings the old soil with it." *Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 682 (Iowa 2022) (quoting Scalia & Garner, *Reading Law* at 73); *see also* Scalia & Garner, *Reading Law* at 320–21 (describing the canon of imputed common law meaning, under which statutes that use common law terms without defining them usually "adopt[] [the] common-law meaning").

Here, the State points out that "attempt" has a well-established meaning in the common law. *See State v. Walker,* 856 N.W.2d 179, 187 (Iowa 2014). Although this common law meaning is formulated in different ways, they all tend to boil down to two things: (1) the defendant's intent to do a criminal act and (2) some action by the defendant in furtherance of that intent. *Id.* What is not required, however, is factual possibility. Wayne R. LaFave, 2 *Substantive Criminal Law* § 11.5(a)(2), at 323–26 (3d ed. 2018). And so, under this common law meaning of attempt, it wouldn't matter that there was no real "victim" or other "person" who was really "engaged in human trafficking." Iowa Code § 710A.1(4)(*b*). All that would matter is that Lind thought that there were such people (and took steps to complete the crime he imagined).

But even when a statute uses a term with an established legal meaning, common law or otherwise, that legal meaning does not automatically govern. For instance, Scalia and Garner note that "[i]f the context makes clear that a statute

uses a common-law term with a different meaning, the common-law meaning is of course inapplicable." Scalia & Garner, *Reading Law* at 321. And the United States Supreme Court has several times found that although Congress had used a classic common law term in a statute, the common law meaning did not apply. *See Taylor v. United States*, 495 U.S. 575, 595–96 (1990) (collecting examples). Most persuasively, Iowa's legislature has counseled that even when a statutory word has an established legal meaning, that is not necessarily the proper meaning. In chapter 4, our legislature has provided guidance for resolving various interpretive issues. And, to be sure, subsection (38) of section 4.1 counsels that words that "have acquired a peculiar and appropriate meaning in [the] law . . . shall be construed according to such meaning." Iowa Code § 4.1(38). But we must not overlook the introductory clause to section 4.1, which qualifies all of that section's prescriptions, including subsection (38). *Id.* § 4.1. That preface makes clear that none of section 4.1's various prescriptions are absolute. *Id.* It makes clear that those prescriptions *shouldn't* be followed when they are "repugnant to the context of the statute." *Chandler v. Iowa Dep't of Corr.*, 17 N.W.3d 645, 649 (Iowa 2025) (quoting Iowa Code § 4.1 (2023)) ("It is worth recalling that even the introductory clause to § 4.1 counsels that we do not presume one of its definitions applies if such an application would be 'repugnant to the context of the statute.' " (quoting Iowa Code § 4.1 (2023))); *see also id.* (concluding that "person" as defined in section 80F.1(13) (2023) referred to "an individual human—as opposed to the expansive definition found in § 4.1(20)").

3. *Further analysis.* We are left, then, with two plausible interpretations from which to choose: the State's legal-meaning approach, or the ordinary-meaning approach advanced by Lind and adopted by the district court. To decide

which one is correct, we examine the available contextual clues under the light of traditional interpretive canons.

a. *The relevant context.* We start by noting that the relevant statutory context is not limited to the human trafficking statute under which Lind was charged. Rather, under the related-statutes canon, "[s]tatutes *in pari materia*"—that is, statutes relating to the same subject matter—"are to be interpreted together, as though they were one law." Scalia & Garner, *Reading Law* at 252; *see also, e.g.*, *State v. Hensley*, 911 N.W.2d 678, 682 (Iowa 2018) ("When there are similar statutes relevant to the subject matter at issue, we interpret the challenged statute '*in pari materia*, or "by reference to other similar statutes or other statutes related to the same subject matter." ' " (quoting *State v. Coleman*, 907 N.W.2d 124, 137 (Iowa 2018))). Therefore, when we speak of the context for a statutory term or phrase, we must include the full "*corpus juris*"—that is, the full body of law—of which that term or phrase "forms a part." Scalia & Garner, *Reading Law* at 252–53. This includes "the entire relevant body of the law for the same purpose." *Id.* (quoting *Ealing L.B.C. v. Race Relations Bd.* [1972] AC 342 (HL) 361).

In this case, we are considering Iowa Code chapter 710A's prohibition against human trafficking of minors. This prohibition fits within the larger body of Iowa statutes that protect minors against sex crimes. This includes all of Iowa Code chapter 710A as well as the child-related portions of Iowa Code chapter 709, the "Sexual Abuse" chapter. It also includes the child-protective portions of Iowa Code chapter 710, entitled "Kidnapping and Related Offenses." And it includes other child-protection measures like Iowa Code section 728.12, entitled "Sexual exploitation of a minor," and Iowa Code section 728.15, entitled "Telephone dissemination of obscene material to minors."

b. *Sifting the clues.* With this body of law in mind, we begin our search for useful contextual clues. We start by noting that the offense of human trafficking was first enacted in 2006. 2006 Iowa Acts ch. 1074 (codified at Iowa Code ch. 710A (2007)). Since then, there have been important changes to the human trafficking statute. There have also been significant developments in the larger body of law of which that statute is a part. We consider each of these developments, starting with the relevant changes in 2012, then progressing to those in 2023, 2024, and 2025.

**2012.** In 2012, the legislature enacted House File 2390, which dealt with "Obscene Material, Commercial Sexual Activity, and Human Trafficking." 2012 Iowa Acts ch. 1057. House File 2390 made significant amendments both to the human trafficking statute and to other related statutes. These amendments, which appeared in sections 2, 3, and 4 of the house file, are reproduced here:

> **Sec[tion] 2.** Section 710A.1, subsection 4, Code 2011, is amended to read as follows:
>
> 4. *a.* "*Human trafficking*" means participating in a venture to recruit, harbor, transport, supply provisions, or obtain a person for any of the following purposes:
>
> ~~*a.*~~ (1) Forced labor or service that results in involuntary servitude, peonage, debt bondage, or slavery.
>
> ~~*b.*~~ (2) Commercial sexual activity through the use of force, fraud, or coercion, except that if the trafficked person is under the age of eighteen, the commercial sexual activity need not involve force, fraud, or coercion.
>
> <u>*b.* "*Human trafficking*" also means knowingly purchasing or attempting to purchase services involving commercial sexual activity from a victim or another person engaged in human trafficking.</u>

**Sec[tion] 3.** Section 710A.2, Code 2011, is amended by adding the following new subsection:

NEW SUBSECTION. 8. A person's ignorance of the age of the victim or a belief that the victim was older is no defense to a violation of this section.

**Sec[tion] 4.** NEW SECTION. 710A.2A Solicitation of commercial sexual activity.

A person shall not entice, coerce, or recruit, or attempt to entice, coerce, or recruit either a person under the age of eighteen or a law enforcement officer or agent representing oneself to be under the age of eighteen, to engage in a commercial sexual activity. A person who violates this section commits a class "D" felony.

*Id.* §§ 2–4 (codified at Iowa Code §§ 710A.1(4), .2(8), 2A (2013)) (emphases added and omitted).

As this excerpt shows, section 2 of House File 2390 expanded the definition of human trafficking. This expansion added the "attempting" definition at issue in this case. *See id.* § 2 (codified at Iowa Code § 710A.1(4)(*b*) (2013)).

Our understanding of that "attempting" definition is aided by two other changes that were also made in House File 2390. First, in section 3, House File 2390 further modified the human trafficking statute by adding this sentence: "A person's ignorance of the age of the victim or a belief that the victim was older is no defense to a violation of this section." *Id.* § 3 (codified at Iowa Code § 710A.2(8) (2013)).[2] This addition would be unnecessary—and possibly nonsensical—if the State were right about the effect of the word "attempting" in the human trafficking statute. After all, under the State's view of attempting, there is no need for a real-life victim so long as the perpetrator believes there is one. But the addition just quoted plainly anticipates that "the victim" of human

---

[2]This subsection was later renumbered as subsection (10). *See* Iowa Code § 710A.2(10).

trafficking is a real person who has an age, although "the age of the victim" might or might not be known by the perpetrator. *Id.* § 3 (codified at Iowa Code § 710A.2(8) (2013)). This raises doubts about the State's view of "attempting."

We turn next to section 4, which created a new crime: "Solicitation of commercial sexual activity," Iowa Code section 710A.2A. 2012 Iowa Acts ch. 1057, § 4 (codified at Iowa Code § 710A.2A (2013)). Among other things, section 710A.2A criminalizes an "attempt" to "entice . . . a person under the age of eighteen . . . to engage in a commercial sexual activity." Iowa Code § 710A.2A (2013). Separately, section 710A.2A also criminalizes an "attempt" to "entice . . . a law enforcement officer or agent representing oneself to be under the age of eighteen . . . to engage in a commercial sexual activity." *Id.*

This language cuts against the State's interpretation in at least two different ways. First of all, there is a point to be made about the "selective placement of statutory terms." *State v. Macke*, 933 N.W.2d 226, 235 (Iowa 2019). "[W]hen the legislature includes particular language in some sections of a statute but omits it in others, we presume the legislature acted intentionally." *Id.*; *accord State v. Hall*, 969 N.W.2d 299, 309 (Iowa 2022) ("Meaning 'is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned.' " (quoting *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995))).

These principles are relevant here. When drafting the new section 710A.2A, the legislature included the phrase "a law enforcement officer or agent representing oneself to be under the age of eighteen." 2012 Iowa Acts ch. 1057, § 4 (codified at Iowa Code § 710A.2A (2013)). Yet the legislature did not add that sort of law-enforcement language to the human trafficking statute. The legislature did not add that language even though, as we have explained, the

legislature made *other* material changes to the human trafficking statute in the very same act, House File 2390. *See id.* §§ 2, 4 (codified at Iowa Code §§ 710A.1(4)(*b*), .2A (2013)). The natural inference is that the legislature chose *not* to make the human trafficking statute apply to situations where a law enforcement officer is merely pretending to play a role in the scheme. Of course, the State would respond that undercover-law-enforcement language was not needed in the human trafficking statute because it already included the word "attempting." But the solicitation crime created in section 710A.2A can *also* be committed through an "attempt"—and yet the legislature *still* added law-enforcement language *to it.* This weighs against the State's attempt theory.

The surplusage canon also weighs against the State's view. Again, even though section 710A.2A can be violated through an "attempt," the possible victims are identified as *either* "a person who is under the age of eighteen" *or* "a law enforcement officer or agent who is representing that the officer or agent is under the age of eighteen." Iowa Code § 710A.2A (2024). Yet, under the State's view of "attempt," it *does not matter* whether the victim of a sex crime is *actually* a minor or, instead, an officer pretending to be a minor. So, under the State's theory, the words "law enforcement officer or agent who is representing that the officer or agent is under the age of eighteen" have no effect at all. *Id.* Under the State's view, those nineteen words are mere surplusage. Yet we have often said that "every word and every provision in a statute is to be given effect, if possible, and *not* deemed mere surplusage." *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 703 (Iowa 2022); *see also State v. Middlekauff*, 974 N.W.2d 781, 801 (Iowa 2022) ("Middlekauff's proposed interpretation of the valid prescription or order defense under [section] 124.401(5) would render it superfluous."); *Iowa Ins. Inst.*, 867 N.W.2d at 75 ("Another principle of statutory interpretation is that '[w]e

presume statutes or rules do not contain superfluous words.' " (alteration in original) (quoting *State v. McKinley*, 860 N.W.2d 874, 882 (Iowa 2015))).

Of course, as the State notes, we have recognized that the legislature "sometimes purposefully employs a degree of 'overlap or redundancy' if only to 'remove any doubt and make doubly sure.' " *Randolph v. Aidan, LLC*, 6 N.W.3d 304, 311 (Iowa 2024) (quoting Ethan J. Leib & James J. Brudney, *The Belt-and-Suspenders Canon,* 105 Iowa L. Rev. 735, 737 n.5 (2020)). And so, the State argues, we can treat express language about undercover law enforcement as a mere redundancy that adds nothing of substance to statutes that can be violated through an attempt.

"Yet," as Scalia and Garner note, "words with no meaning—language with no substantive effect—should be regarded as the exception rather than the rule." Scalia & Garner, *Reading Law* at 178. This seems especially appropriate in Iowa, where our legislature has said it is "presumed" that when it enacts a statute, "[t]he entire statute is intended to be effective." Iowa Code § 4.4(2); *see also Hummel v. Smith*, 999 N.W.2d 301, 306 (Iowa 2023) (applying the presumption against superfluous words). And here, at least, we do not think the exception should apply. Think once more about House File 2390. The legislature was simultaneously crafting two new criminal offenses by (1) enacting section 710A.2A and (2) adding a new definition of human trafficking. 2012 Iowa Acts ch. 1057, §§ 2, 4 (codified at Iowa Code §§ 710A.1(4)(*b*), .2A (2013)). Both new offenses could be violated through an attempt. *Id.* (codified at Iowa Code §§ 710A.1(4)(*b*), .2A (2013)). And yet the legislature chose to put undercover-law-enforcement language only in one of them—section 710A.2A—and not in the human trafficking statute. *See id.* (codified at Iowa Code §§ 710A.1(4)(*b*), .2A

(2013)). We read that choice as intelligent and deliberate. And we are reluctant to deprive that choice of meaning, as the State's theory would.

**2023.** Now we fast-forward from 2012 to 2023, the year before Lind's alleged offense. In 2023, the legislature enacted two relevant bills. First, in House File 630, the legislature changed the human trafficking offense from a "D" felony to a "B" felony. 2023 Iowa Acts ch. 87, § 1 (codified at Iowa Code § 710A.2(1) (2024)). But "if the victim is under the age of eighteen," the bill provided, "the crime shall be an 'A' felony." *Id.* (codified at Iowa Code § 710A.2(1) (2024)). Previously, it had been a "C" felony. *Id.*

During that same session, the legislature made other changes to related statutes through Senate File 84. 2023 Iowa Acts ch. 74. Senate File 84 addressed various issues concerning sex crimes involving minors, including "the utilization of undercover law enforcement officers or agents posing as minors." *Id.* Of particular relevance here, Senate File 84 added language about undercover law enforcement to three different Code sections:

1. Iowa Code section 710.10 is entitled "Enticing a minor." It creates four different offenses. *See id.* § 710.10(1)–(4). Senate File 84 added law-enforcement language to all four. 2023 Iowa Acts ch. 74, § 1 (codified at Iowa Code § 710.10(1)–(4) (2024)). As an example, here is subsection 710.10(1) with the new law-enforcement language underlined: "A person commits a class 'C' felony when, without authority and with the intent to commit sexual abuse or sexual exploitation upon a minor under the age of thirteen, the person entices or attempts to entice a person reasonably believed to be under the age of thirteen <u>including a law enforcement officer or agent posing as a</u>

minor under the age of thirteen." *Id.* (codified at Iowa Code § 710.10(1) (2024)).

2. Iowa Code section 728.12 is entitled "Sexual exploitation of a minor." Senate File 84 added law-enforcement language to it as well. 2023 Iowa Acts ch. 74, § 2 (codified at Iowa Code § 728.12(1) (2024)). Here is an excerpt with the new language underlined: "It shall be unlawful to employ, use, persuade, induce, entice, coerce, solicit, knowingly permit, or otherwise cause or attempt to cause a minor <u>or a law enforcement officer or agent posing as a minor</u> to engage in a prohibited sexual act or in the simulation of a prohibited sexual act." *Id.* (codified at Iowa Code § 728.12(1) (2024)).

3. Senate File 84 also added law-enforcement language to Iowa Code section 728.15. 2023 Iowa Acts ch. 74, § 3 (codified at Iowa Code § 728.15(1)(*b*) (2024)). Here is an excerpt with the new language underlined: "A person shall not knowingly disseminate obscene material by the use of telephones or telephone facilities to a minor <u>or a law enforcement officer or agent posing as a minor</u>." *Id.* (codified at Iowa Code § 728.15(1)(*b*) (2024)).

As we consider the text of these three statutes—and especially their 2023 amendments—we find several reasons to doubt the State's interpretive approach in this case. For starters, we are reminded of the district court's thoughtful comparison of Iowa Code section 710.10(1) with the human trafficking statute. The district court noted that according to the State's theory, Lind violated the human trafficking statute because he "*believed* he was purchasing services from another person engaged in human trafficking." That sort of theory would make sense under a statute like Iowa Code section 710.10(1), in which the legislature

prohibited enticing or attempting to entice "a person reasonably *believed* to be under the age of thirteen." (Emphasis added.) "In contrast," the district court noted, the legislature included no "language based on the Defendant's subjective belief" in the human trafficking statute. This, of course, weighs against the State's theory.

So do the 2023 amendments. If—as the State argues—the legislature had wanted the human trafficking statute to apply to situations involving undercover law enforcement, the legislature could have easily added law-enforcement language to the human trafficking statute—just as it did in sections 710.10, 728.12, and 728.15 (and previously in section 710A.2A, as discussed). But the legislature did not. This certainly weighs against the State's view. *See Comm'r v. Beck's Est.*, 129 F.2d 243, 245 (2d Cir. 1942) ("The familiar 'easy-to-say-so-if-that-is-what-was-meant' rule of statutory interpretation has full force here." (footnote omitted)); *State v. McDonald*, 197 N.W.2d 573, 574 (Iowa 1972) ("If that had been the legislative intent it could easily have so stated."). And while the State would say that law-enforcement language is unnecessary because the human trafficking statute can be violated through an attempt, sections 710.10 and 728.12 *can also* be violated through an attempt—and yet the legislature added law-enforcement language to them.

Remember also that—during the 2023 session—the legislature was *also* working on the human trafficking statute. The legislature had the hood up, so to speak, and it was making changes. As mentioned, House File 630 changed the felony levels for the human trafficking statute. 2023 Iowa Acts ch. 87, § 1 (codified at Iowa Code § 710A.2 (2024)). And yet, as mentioned, the 2023 legislature *did not add* undercover-law-enforcement language to the human trafficking statute—even though it *did* add that language to three *other* related

statutes. *See id.*; 2023 Iowa Acts ch. 74, §§ 1–3 (codified at Iowa Code § 710.10(1)–(4); *id.* §§ 728.12(1), .15(1)(*b*) (2024)). This all makes it hard to accept the State's view that the human trafficking statute—as it existed in 2023—would have applied to cases built around undercover law enforcement officers.

**2024.** But did anything change between 2023 and Lind's alleged crime? The answer is no. Lind's alleged crime occurred in the fall of 2024. And there were no changes to the human trafficking statute in the 2024 session. So, the 2024 statute under which Lind was charged was the same as the 2023 version just discussed. And, as explained, the 2023 version was hard to square with the State's interpretation.

**2025.** Now we skip ahead to 2025, the year *after* Lind's alleged crime. In the spring of 2025, the legislature enacted House File 649, which made two important changes to the human trafficking statute. 2025 Iowa Acts ch. 97. First, House File 649 made these changes to the definition of "human trafficking":

> *b.* "Human trafficking" also means knowingly purchasing or attempting to purchase services involving commercial sexual activity from a victim or another person engaged in human trafficking, or from a law enforcement officer or agent posing as a person engaged in human trafficking.

*Id.* § 1 (codified at Iowa Code § 710A.1(4)(*b*) (2026)). In addition, House File 649 made these changes to the definition of "victim":

> 13. "Victim" means ~~a person subjected to human trafficking.~~ any of the following:
>
> > *a.* A person subjected to human trafficking.
> >
> > *b.* A person who is identified as being subjected to or targeted for human trafficking.
> >
> > *c.* A law enforcement officer or agent posing as a person subjected to or a target for human trafficking.

*Id.* § 2 (codified at Iowa Code § 710A.1(13) (2026)).

These changes implicate the principle that "a material change" in statutory language is presumed to "change the force and effect of the existing law." 82 C.J.S. *Statutes* § 465, at 649 (2022); *accord* Scalia & Garner, *Reading Law* at 256. Following that presumption here, we conclude that the 2025 amendments changed the force and effect of the human trafficking statute. *See, e.g., City of Cedar Rapids v. James Props., Inc.,* 701 N.W.2d 673, 677 (Iowa 2005) ("[A]n amendment to a statute raises a presumption that the legislature intended a change in the law."); *Midwest Auto. III, LLC v. Iowa Dep't of Transp.,* 646 N.W.2d 417, 425 (Iowa 2002) ("Such a material modification of statutory language raises a presumption that a change in the law was intended."); *State v. Ahitow,* 544 N.W.2d 270, 273 (Iowa 1996) ("Moreover, any material change in the language of a statute is presumed to alter the law.").

These 2025 changes suggest that the district court's dismissal should be affirmed. Remember that even though Lind allegedly thought he was negotiating with a person who was actually engaged in human trafficking, he was really negotiating with a law enforcement officer. Remember, too, that although Lind allegedly thought he was negotiating for a chance for sex with Destini, there was no real Destini, and any supposed pictures of Destini were really age-regressed photos of a police officer. These kinds of police "sting" tactics are exactly what the 2025 amendments were designed to authorize. So, because we conclude that those 2025 amendments were a change in the law, we infer that those tactics were *not* authorized by the 2024 statute under which Lind was charged. *See* Iowa Code § 710A.1(4)(*b*).

4. *Conclusion.* As explained, we have considered the State's arguments about the term "attempting" in light of the relevant statutory context and our

traditional principles of interpretation. Ultimately, we disagree with the State. Instead, we agree with the district court and with Lind. We agree that under the 2024 version of the statute, a charge of "knowingly . . . attempting to purchase services involving commercial sexual activity from a victim or another person engaged in human trafficking" requires the existence of an actual "victim"—defined as "a person subjected to human trafficking"—or some other actual "person engaged in human trafficking." *Id.* § 710A.1(4)(*b*), (13). We disagree with the State's contrary view that in the 2024 statute, the term "attempting" is sufficient to eliminate the need for an actual victim or another person who is actually involved in human trafficking. It is not.

We have considered all of the State's counterarguments. For instance, we have considered the State's argument that our reading would "threaten[] to end all Iowa sting operations that aim to prevent human trafficking." We disagree. As explained, the legislature knows how to authorize sting operations when it wants to. For instance, in 2012, when the legislature enacted section 710A.2A—the new solicitation offense—the legislature expressly said that the offense could be committed by enticing (or attempting to entice) *either* an actual "person under the age of eighteen" *or, alternatively*, "a law enforcement officer or agent representing oneself to be under the age of eighteen." 2012 Iowa Acts ch. 1057, § 4 (codified at § 710A.2A (2013)). Likewise, in 2023, the legislature added similar undercover-law-enforcement language to sections 710.10, 728.12, and 728.15. 2023 Iowa Acts ch. 74, §§ 1–3 (codified at Iowa Code § 710.10(1)–(4); *id.* §§ 728.12(1), .15(1)(*b*) (2024)). And now, through the 2025 amendments, the human trafficking statute has the same kind of language. 2025 Iowa Acts ch. 97,

§§ 1–2 (codified at Iowa Code § 710A.1(4)(*b*), (13)(*c*) (2026)). So there is now explicit authorization for the use of sting operations in these statutes.[3]

We also recognize the State's point that many other jurisdictions have read the term "attempt" to obviate the need for real victims and, therefore, to authorize convictions based on attempts to buy sex services from police officers. *See, e.g.*, *People v. Moses*, 477 P.3d 579, 583–85 (Cal. 2020). As we have explained, however, we are required to consider the words of Iowa statutes in their context, which includes the larger corpus of relevant Iowa law. *See Hensley*, 911 N.W.2d at 682. We have done so here. Through that process, we believe we have arrived at the interpretation that best reflects the will of Iowa's elected lawmakers as expressed in the words of the Iowa laws that they have enacted.

We have also considered the State's suggestion that if we find the human trafficking statute to be ambiguous, we should look beyond its text to pro-enforcement purposes that might pull Lind's behavior within the statute's ambit. As we mentioned at the outset, though, criminal law is purely a creature of statute. *Pagliai*, 30 N.W.3d at 228. And we are not authorized to expand criminal liability beyond what the legislature has created through the enacted text. *See id.* at 228–29. As we recently reiterated, "[c]riminal statutes are . . . inelastic, and cannot by construction be made to embrace cases plainly without the letter though within the reason and policy of the law." *State v. Cooley*, 21 N.W.3d 137, 144 (Iowa 2025) (alteration and omission in original) (quoting *State v. Lovell*, 23 Iowa 304, 305 (1867)).

---

[3]There also appears to be implicit authorization for such operations under the grooming statute, Iowa Code section 709.8A (2026), which criminalizes not only actual grooming or "attempt[ed]" grooming of "a child," but also "attempt[ed]" grooming of "a person believed to be a child." This last language would presumably include a law enforcement officer posing as a child if the defendant "believed [the officer] to be a child." *Id.*

Indeed, our court follows the rule of lenity, which requires that persistent ambiguities in criminal statutes should be resolved in favor of the accused. *See State v. Zacarias*, 958 N.W.2d 573, 581 (Iowa 2021). Of course, we apply this rule only "as a last resort." *Id.* We apply it "only when a reasonable doubt persists" as to the statute's proper interpretation "after the traditional canons of interpretation have been considered." *State v. Hess*, 983 N.W.2d 279, 289 (Iowa 2022) (quoting Scalia & Garner, *Reading Law* at 197).

Here, our application of the traditional canons has led us to conclude that the State's interpretation is incorrect, and the district court's interpretation is correct. But even if there were still lingering doubts as to which view was correct, the rule of lenity would counsel us to adopt the district court's view.

### IV. Disposition.

The district court was correct to dismiss the human trafficking charge. We affirm.

**Affirmed.**